The STATE of Texas, Appellee,

v.

Danny Joe DAUGHERTY, Appellant.

No. 0924–94.

Court of Criminal Appeals of Texas, En Banc.

June 26, 1996.

Jeff Kearney, Greg Westfall, Fort Worth, for appellant.

Matthew Paul, Assistant States Attorney, Austin, Sylvia Mandel, Assistant District Attorney, Fort Worth, for state.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

CLINTON, Judge.

Following the lead of this Court's plurality opinion in *Garcia v. State*, 829 S.W.2d 796 (Tex.Cr.App.1992), the Second Court of Appeals in this cause declined to recognize an inevitable discovery exception to the statutory exclusionary rule embodied in Article 38.23, V.A.C.C.P.[1] *Daugherty v. State*, 876 S.W.2d 522 (Tex.App.—Fort Worth 1994). In *Garcia* the plurality had reasoned that "because the federal inevitable discovery doctrine is not an exception to core prohibitions of the Fourth Amendment, but only an exception to the federal exclusionary rule, the mandate of article 38.23 to exclude any evidence obtained in violation of the United States Constitution does not, even by necessary implication, require a decision about whether evidence would inevitably have been discovered anyway." *Id.*, at 798. We granted the State's petition for discretionary review in this cause to reexamine this issue. Having done that, we today reaffirm the reasoning and holding of *Garcia*.

■ We are essentially called upon in this cause to decide what Article 38.23(a) means by "evidence obtained in violation of" the law. In our view this language brooks no inevitable discovery doctrine; evidence actually "obtained in violation of law" must be excluded whether or not it might later have been "obtained" lawfully.

The dissenters would hold that, as with the doctrine of attenuation of taint, inevitable discovery serves to "legally break" the causal connection between illegal conduct and acquisition of evidence. Dissenting op. at 278. It is this "legal" break "and not necessarily some actual break in the chain of causation [that] is what breaks the causal connection ..." Dissenting op. at 277. Thus the dissenters essentially concede that the inevitable discovery doctrine is a legal fiction—that it does not *actually* break the causal connection. Yet the dissenters seem to believe that because the United States Supreme Court has adopted this fiction for purposes of its own court-made exclusionary rule, somehow this legal fiction must also be found within the language of our exclusionary statute. This is a strange breed of statutory construction. The dissent attempts to bolster its claim with citation to prior opinions of this Court. But the basis for the holdings in

1. Article 38.23(a), supra, reads:
   "No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."

those prior opinions is less than crystal clear. Indeed, other than in *Garcia* itself, which the dissenters reject out of hand, we have never squarely addressed whether Article 38.23 accommodates an inevitable discovery doctrine.

### Plain Language

■ In divining legislative intent, we look first to the language of the statute. When the meaning is plain, we look no further. *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr. App.1991). As *Garcia* made clear, the language of Article 38.23 plainly does not accommodate a doctrine of inevitable discovery. The inevitable discovery doctrine *assumes* a causal relationship between the illegality and the evidence. It *assumes* that the evidence was actually "obtained" illegally. The doctrine then asks whether the evidence would have been "obtained" eventually in any event by lawful means. But the fact that evidence could have been "obtained" lawfully anyway does not negate the fact that it was in fact "obtained" illegally. Under Article 38.23 the inquiry regarding the possible legal attainment of the evidence should never be reached. Once the illegality and its causal connection to the evidence have been established, the evidence must be excluded. See *Garcia v. State,* supra, at 798. The dissenters' legal fiction that what-would-have-been somehow breaks the actual causal connection between illegality and actual procurement of evidence is decidedly *not* accommodated by the plain language of the statute.

Contrary to what the dissenters may claim, their opinion makes the inevitable discovery doctrine an exception to the Texas statutory exclusionary rule. But Article 38.23 already contains one express exception, see Subsection (b) thereof, and according to the rules of statutory construction, where a statute contains an express exception, its terms must apply in all cases not excepted. See 67 Tex. Jur.3d Statutes § 120 (1994); *Garcia,* 829 S.W.2d at 800. "In construing a statute, it is not ordinarily permissible to imply an exception ... Nor may an exception be engrafted on a statute by implication merely because there seems to be good reason for doing so." 67 Tex.Jur.3d Statutes § 121 (1994).

### The Johnson Analogy

It is true that in *Johnson v. State,* 871 S.W.2d 744 (Tex.Cr.App.1994), the Court held that Article 38.23 incorporates the attenuation of taint doctrine. According to the dissent, *Johnson* is squarely controlling, basically adopting the State's argument that "it would make no sense to hold Article 38.23(a) incorporates the attenuation doctrine, but not the inevitable discovery doctrine." Dissenting op. at 276. We disagree.

It makes perfect sense to say that Article 38.23 accommodates the attenuation of taint doctrine, but not inevitable discovery. Under the rules of statutory construction, words are to be interpreted according to common usage and their ordinary meaning. See V.T.C.A. Government Code, § 311.011(a). The word "obtain" commonly means "to gain or attain usually by planned action or effort." Webster's New Collegiate Dictionary (1977). The ordinary meaning of "obtained" may accommodate the attenuation doctrine inasmuch as, depending on how removed the actual attainment of the evidence is from the illegality, the ordinary person would not consider that evidence to have been "obtained" by that illegality. This is especially so if the common meaning of "obtained" includes some concept of "planned action or effort." If the police had not illegally stopped the defendant's car, then not B; if not B, then not C; if not C, then not D; if not D, then not ... Z; if not Z, then not the evidence—there is a point beyond which the ordinary understanding of "obtained" just does not apply. By this argument Article 38.23(a) could be viewed as rejecting a strict "but/for" test for causation—although it is true that but for the initial illegality the evidence would not have been obtained, that will not be held to be "sufficient" for the purposes of exclusion of evidence because the ordinary meaning of "obtained" does not extend to such a remote, or "attenuated," causal relationship. This construction is based on the express language of Article 38.23, not on blind obedience to United States Supreme Court decisions.

But this argument, based as it is on statutory construction, cannot plausibly be made

for the inevitable discovery doctrine. Inevitable discovery *assumes* that the evidence was illegally obtained. From there it further inquires whether the evidence would have been obtained legally in any event. Nothing in the proceeding analysis regarding the attenuation of taint doctrine alters the fact that the plain language of Article 38.23 does not provide for an inquiry into the potential legal acquisition of evidence once it has been established that it was actually "obtained in violation of" law.

### Insufficient Causation

As we understand it, the reasoning of the dissenters proceeds as follows: 1) the Supreme Court has not adopted a pure "but/for" causation analysis in implementing its own court-made exclusionary rule; 2) the Supreme Court has said that, under its exclusionary rule, the fact that illegally obtained evidence would inevitably have been discovered later by legitimate means serves to "legally break" the causal connection between the illegality and the evidence; 3) in *Johnson v. State* we concluded that Article 38.23(a) also does not embrace a pure "but/for" causation analysis; and, 4) because "inevitable discovery" also legally breaks the causal connection, it, like the attenuation of taint doctrine at issue in *Johnson,* must also be accommodated by Article 38.23(a). This is a deft argument—so deft, in fact, that the reader is almost inclined to overlook the fact that it begs, rather than decides, the central question in this cause.

The whole issue here is whether for purposes of interpreting Article 38.23(a), we agree that "inevitable discovery" really does break the causal connection between the illegality and the evidence. That depends, of course, upon what Article 38.23(a) means when it says "evidence obtained in violation of" law. And this is purely a question of statutory construction. Not even the Supreme Court would presume to instruct us on how our own statutes should be construed.

Were we implementing a court-made rule we would of course be free to follow the lead

of the United States Supreme Court.[2] However, because this is a statute enacted by the Texas Legislature, we are required to interpret the language of the statute in order to implement the legislative intent in enacting it. See *Boykin v. State,* supra; V.T.C.A. Government Code, § 311.003; 82 C.J.S. § 322(b)(1). At first glance, the dissenters appear to be performing statutory construction, for they frequently cite to the "obtained in violation of" law language of Article 38.23, V.A.C.C.P. But they quickly abandon this pretense in favor of uncritical adherence to decisions of the United States Supreme Court. They proceed from one sentence in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), in which the Supreme Court uses the "taint" language without elaboration, *viz:* "But when, as here, the evidence in question would inevitably have been discovered without reference to the police error or misconduct, there is no nexus sufficient to provide a taint and the evidence is admissible." *Id.,* 467 U.S. at 448, 104 S.Ct. at 2511, 81 L.Ed.2d at 390. From this refrain the dissenters reason that inevitable discovery somehow creates a "break" in the causal connection between illegality and acquisition of evidence. But they fail to explain just how the causal connection is actually broken by the inevitable discovery doctrine. And while they practically acknowledge that the inevitable discovery doctrine is a legal fiction, they fail to explain how the language of Article 38.23 implements it. The dissenters would simply graft this doctrine upon the language of our statute, with practically no independent critical analysis at all.

### Exclusionary Exception?

The dissenters obviously believe that part of the process of deciding whether evidence has been "obtained in violation of" the Fourth Amendment is determining whether the federal exclusionary rule applies. Unless the Supreme Court would exclude the evidence pursuant to its court-made exclusionary rule, the evidence is simply not illegally

---

**2.** Even then we would not be *bound* to do so. See *Heitman v. State,* 815 S.W.2d 681 (Tex.Cr. App.1991).

obtained. This apparent belief would explain why they invoke federal exclusionary rule principles in interpreting Article 38.23(a). But if this is the dissenters' belief, it misconstrues the nature of the federal exclusionary rule.

As we noted at the outset, the *Garcia* plurality observed that the inevitable discovery doctrine "is not an exception to core prohibitions of the Fourth Amendment, but only an exception to the federal exclusionary rule[.]" 829 S.W.2d at 798. Today the dissenters reject this conclusion, opining instead that the inevitable discovery doctrine is in fact an exception to core prohibitions of the Fourth Amendment. This is so, the dissenters say, "because it strikes a balance between society's interest in deterring police misconduct and the public interest in having juries receive all probative evidence about a crime." Dissenting op. at 278, citing *Nix v. Williams*, supra, 467 U.S. at 443, 104 S.Ct. at 2509, 81 L.Ed.2d at 387. In this they are demonstrably mistaken.

Throughout the majority opinion in *Nix*, and in all separate opinions therein, every member of the Supreme Court characterized the inevitable discovery doctrine as an exception to the exclusionary rule. Less than a month after *Nix* was decided, the Supreme court handed down its opinion in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). There the Court first recognized the so-called "good faith" exception to the exclusionary rule, refusing to require suppression of evidence seized under a search warrant unsupported by probable cause so long as the seizing officer reasonably relied upon the erroneous judgment of the magistrate who issued the warrant that the supporting documentation did supply the necessary probable cause. Along the way the Court made clear that the question whether the exclusionary rule should apply is quite distinct from the question whether a violation of the Fourth Amendment has occurred. Indeed, the Court characterized the search at issue in *Leon* as "concededly unconstitutional." *Id.*, 468 U.S. at 915, n. 13, 104 S.Ct. at 3416, n. 13, 82 L.Ed.2d at 693–94, n. 13. The Court went on to say:

> "Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct. Only the former question is currently before us, and it must be resolved by weighing the costs and benefits of preventing the use in the prosecution's case-in-chief of inherently trustworthy tangible evidence obtained in reliance on a search warrant issued by a detached and neutral magistrate that ultimately is found to be defective."

468 U.S. at 906–07, 104 S.Ct. at 3412, 82 L.Ed.2d at 688 (citations and internal quotations omitted). It is clear from this treatment in *Leon* that the very "balance" between deterrence and the societal cost of exclusion that today's dissenters believe justifies the conclusion that inevitable discovery is an "exception to core prohibitions of the Fourth Amendment" is instead part of the analysis for deciding whether it is an exception to the exclusionary rule. We need reach the question whether the exclusionary rule applies only after we have already concluded that a core Fourth Amendment prohibition has been transgressed. As the Supreme Court made plain in *Leon*:

> "The wrong condemned by the Amendment is fully accomplished by the unlawful search or seizure itself, and the exclusionary rule is neither intended nor able to cure the invasion of the defendant's rights which he has already suffered."

*Id.*, 468 U.S. at 906, 104 S.Ct. at 3411–12, 82 L.Ed.2d at 687 (citations and internal quotations omitted).

Clearly, whether evidence has been illegally obtained is a different and separate question from whether an exclusionary rule should apply. Article 38.23 applies, by its express terms, whenever it is shown evidence was "obtained in violation of" law. Establishing the illegality does not depend upon a showing that other sovereigns would exclude the evidence. The dissenters are woefully mistaken to believe that evidence is "obtained in violation of" the law only if the

Fourth Amendment exclusionary rule would operate to exclude it.

### Stare Decisis

Finally, the dissenters assert that their view is also dictated by *stare decisis*, citing *Vanderbilt v. State*, 629 S.W.2d 709 (Tex.Cr. App.1981), and *Bell v. State*, 724 S.W.2d 780 (Tex.Cr.App.1986), as if they were controlling precedents. Dissenting op. at 279–280. Neither truly is. In *Vanderbilt* this Court apparently decided that inevitable discovery was an exception to the federal exclusionary rule; Article 38.23 was never mentioned.[3] None of the Texas cases *Vanderbilt* cites as having applied the principle of inevitable discovery specifically refers to Article 38.23, let alone offers any analysis of the language of Article 38.23. See *Ex parte Parker*, 485 S.W.2d 585 (Tex.Cr.App.1972); *Santiago v. State*, 444 S.W.2d 758 (Tex.Cr.App.1969); *Johnson v. State*, 496 S.W.2d 72 (Tex.Cr.App. 1973); *McMahon v. State*, 582 S.W.2d 786 (Tex.Cr.App.1978); *Noble v. State*, 478 S.W.2d 83 (Tex.Cr.App.1972); *Pitts v. State*, 614 S.W.2d 142 (Tex.Cr.App.1981); *Nicholas v. State*, 502 S.W.2d 169 (Tex.Cr.App.1973). All of these cases appear to have been decided on the basis of the federal exclusionary rule. Thus, *Vanderbilt* and the cases it cites can hardly be considered *stare decisis* for the view advanced by the dissenters today.

In *Bell*, supra, this Court held that the attenuation of taint doctrine was applicable to Article 38.23, and may have similarly held as to the inevitable discovery doctrine.[4] However, like the dissenters would do today, *Bell* seems merely to have grafted these federal exclusionary rule doctrines into Texas criminal jurisprudence, without any analysis

whether the language of Article 38.23 "accommodates" them. The only opinion to conduct such an analysis thus far is *Garcia*. For the reasons stated in that opinion, and additional reasons set out herein, we now hold that Article 38.23 does not contemplate an inevitable discovery exception. The court of appeals did not err in this cause to fail to apply one.

### Harm?

■ We also granted the State's petition in order to review the contention that the court of appeals erred in failing to conduct an analysis for harm after ruling the trial court should have granted appellant's motion to suppress evidence. Error in the admission of evidence that should have been suppressed is subject to a harm analysis under Tex. R.App.Pro., Rule 81(b)(2). We have essentially held before, and today we expressly reiterate, that a direct appellate court must conduct a Rule 81(b)(2) harm analysis *sua sponte*, without the necessity of prompting by the State, whenever it perceives this type of error in the record. See *Weatherford v. State*, 828 S.W.2d 12, 13 (Tex.Cr.App.1992).

Accordingly, we vacate the judgment of the court of appeals and remand the cause to that court for further proceedings pursuant to Rule 81(b)(2).

BAIRD, Judge, concurring.

In *Garcia v. State*, 829 S.W.2d 796 (Tex. Cr.App.1992), a plurality held there was no inevitable discovery exception to Tex.Code Crim.Proc.Ann. art. 38.23. I dissented then but now join the opinion of the Court. I

---

**3.** At the time *Vanderbilt* was decided, the United States Supreme Court had not yet adopted the inevitable discovery doctrine as an exception to the federal exclusionary rule. See *Nix v. Williams*, supra. However, the United States Supreme Court had held that the federal exclusionary rule was applicable to the states. See *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

**4.** In *Bell* this Court concluded that the evidence seized during the first search of the appellant's residence should have been excluded as the fruit of an illegal arrest. The Court then stated that these items "clearly would have been recovered

in one of the later, untainted searches of appellant's residence. They are therefore admissible under the rationale of inevitable discovery. See *Miller v. State*, 667 S.W.2d 773, 778 (Tex.Cr.App. 1984), and cases cited therein." *Id.* at 793. Although *Bell* mentions Article 38.23 extensively with regard to the attenuation of taint doctrine, it does not mention Article 38.23 at all in connection with the inevitable discovery doctrine. Furthermore, the *Miller* case appears to have been based on the federal exclusionary rule; once again, Article 38.23 was not mentioned in the opinion, and the cases cited in *Miller* are the same as the cases cited in *Vanderbilt*.

write separately to state my reasons for so doing.

Subsequent to *Garcia*, and prior to our opinions today, the Legislature twice convened. The 73rd Legislature convened its Regular Session on January 12, 1993, and adjourned *sine die* May 31, 1993. The 74th Legislature convened its Regular Session on January 10, 1995, and adjourned *sine die* May 29, 1995. However, in neither session did the Legislature amend art. 38.23.

In *Marin v. State*, 891 S.W.2d 267, 271–272 (Tex.Cr.App.1994), we stated: "When the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the legislature intended the same construction should continue to be applied to that statute." The *Marin* majority followed the legal principle adopted eighty-six years ago in *Lewis v. State*, 58 Tex.Crim. 351, 127 S.W. 808, 812 (1910). Accordingly, we must presume the Legislature approved of *Garcia*'s interpretation of art. 38.23.[1] *See also, Gonzales v. State*, 818 S.W.2d 756, 775 (Tex.Cr.App.1991) (Baird, J., dissenting), and *Dillehey v. State*, 815 S.W.2d 623, 631 (Tex.Cr.App.1991) (Baird, J., dissenting).

More than a century ago, Chief Justice Slayton of the Texas Supreme Court stated:

> ... It is the duty of a court to administer the law as it is written, and not to make law; and however harsh a statute may seem to be, or whatever may seem to be its omission, courts cannot ... make it apply to cases to which it does not apply, without assuming functions that pertain to the legislative department of the government.

*Turner v. Cross*, 83 Tex. 218, 18 S.W. 578, 579 (1892).

Chief Justice Slayton's words remain true. It is the role of our appellate courts to interpret the law enacted by the Legislature. And, as jurists, we are obliged to implement the expressed will of the Legislature. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr. App.1991). Because art. 38.23 does not expressly contain an exception for inevitable discovery, we are not authorized to create such an exception.

With these comments, I join the majority opinion.

McCORMICK, Presiding Judge, concurring and dissenting.

I dissent to the majority's disposition of the inevitable discovery issue. The issue in this case is whether Article 38.23(a), V.A.C.C.P., accommodates the federal "inevitable discovery" doctrine set out in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). This doctrine allows the admission of evidence the police would have discovered by means "wholly independent" of any constitutional violation. See *Nix*, 467 U.S. at 447–49, 104 S.Ct. at 2511. In *Garcia v. State*, 829 S.W.2d 796, 798 (Tex.Cr.App. 1992), a plurality of this Court decided the federal inevitable discovery doctrine does not apply to Article 38.23(a). We granted the State Prosecuting Attorney's petition for discretionary review to reexamine this plurality decision.

As I understand the majority's analysis, the "plain" language of Article 38.23(a) does not accommodate the federal inevitable discovery doctrine because that doctrine "assumes" a causal relationship between the illegality and the evidence. Relying on the "ordinary" meaning of the word "obtained," the majority tells us the "plain language of Article 38.23 does not provide for an inquiry into the potential legal acquisition of [the] evidence once it has been established that it

---

1. This presumption is supported by the fact that Tex.Code Crim.Proc.Ann. art. 38.23 was last amended by the Legislature effective September 1, 1987. The amendment was made in response to the opinion of the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

Judge McCormick states there is no significance to the Legislature's inaction following *Garcia* because *Garcia* was a plurality opinion. But the Legislature does respond to plurality opinions. A case on point is the plurality opinion in *Grunsfeld v. State*, 843 S.W.2d 521, 526 (Tex.Cr. App.1992), wherein a plurality of this Court held that Tex.Code Crim.Proc.Ann. art. 37.07(3)(a) did not permit the admission of unadjudicated offenses in non-capital cases. The very next legislative session art. 37.07(3)(a) was amended. Acts 1993, 73rd Leg., ch. 900, § 5.05 eff. Sept. 1, 1993.

was actually 'obtained in violation of' law." The majority claims the issue presented here is "purely a question of statutory construction," and criticizes what they characterize as "uncritical adherence to decisions of the United States Supreme Court" to construe a Texas statute.

But, we then learn the majority opinion ultimately relies on federal constitutional decisions to conclude the federal inevitable discovery doctrine assumes the evidence was "obtained in violation of the law." · Despite the majority's criticism about "uncritical adherence to decisions of the United States Supreme Court," their opinion and mine ultimately rely on federal constitutional decisions for our resolution of the critical question of whether the federal inevitable discovery doctrine considers the evidence "obtained in violation of the law." The resolution of whether the remedy in Article 38.23(a) applies turns *purely* on a question of federal constitutional law.

And, I say the federal inevitable discovery doctrine does not consider the evidence "obtained" in violation of the Federal Constitution; therefore, the "plain" language of Article 38.23(a) does not exclude the evidence. Moreover, under the federal inevitable discovery doctrine, the word "obtained" takes on an entirely different meaning than its "ordinary" meaning. So, the majority errs to rely on the "ordinary" meaning of the word "obtained" in determining whether Article 38.23(a) accommodates the federal inevitable discovery doctrine.

The majority also says the federal inevitable discovery doctrine considers the evidence "obtained" in violation of the Federal Constitution but the evidence is admitted as an "exception" to the federal exclusionary rule. Therefore, according to the majority, the "plain" language of Article 38.23(a) excludes the evidence for purposes of Texas jurisprudence since the judiciary does not have the power to legislate "exceptions" to the "plain" language of Article 38.23(a).[1]

It is important to remember that Article 38.23(a) grants no substantive rights.[2] It is purely a remedial statute that provides for the exclusion of evidence that is "obtained in violation of the law." Here, appellant asserts a Fourth Amendment violation. Therefore, whether the remedy of Article 38.23(a) applies depends upon resolution of the substantive federal question of whether the federal inevitable discovery doctrine considers the evidence "obtained" in violation of the Fourth Amendment when the State can prove by a preponderance of the evidence that the police would have discovered the evidence by means "wholly independent" of any constitutional violation. See *Nix*, 467 U.S. at 447–48, 104 S.Ct. at 2511.

Appellant argues, and the majority apparently agrees, the federal inevitable discovery doctrine considers the evidence "obtained" in violation of the Fourth Amendment. The State disagrees, and argues evidence is not "obtained" in violation of the Fourth Amendment in the absence of a sufficient causal nexus between the evidence and the illegality, and this rule applies whether the causal

1. The majority also relies on the sole "exception" to Article 38.23(a) in support of its position that "according to the rules of statutory construction, where a statute contains an express exception, its terms must apply in all cases not excepted." See Article 38.23(b), V.A.C.C.P., ("good faith exception"). The reader might find it ironic that this legislative "exception" to Article 38.23 came about as a result of another erroneous interpretation of Article 38.23 by this Court. See *Garcia*, 829 S.W.2d at 801–02 (Miller, J., concurring); *Green v. State*, 615 S.W.2d 700, 711–13 (Tex.Cr.App.1980) (McCormick, J., dissenting).

2. For example, Article 38.23(a), in relevant part, provides that no evidence "obtained by an officer or other person" in violation of the law shall be admitted. Some argue the phrase "or other per-

son" is intended to put the same restrictions upon private persons that the law places upon state actors. This is not the case. Sometimes private persons can obtain evidence in violation of the law such as when they are acting at the behest of law enforcement personnel to get a confession. See, e.g., *Alvarado v. State*, 853 S.W.2d 17 (Tex.Cr.App.1993); *Cates v. State*, 776 S.W.2d 170 (Tex.Cr.App.1989); *Paez v. State*, 681 S.W.2d 34 (Tex.Cr.App.1984). Therefore, a defendant presents nothing for review when he complains that a private person obtained evidence in violation of Article 38.23(a), or that certain evidence was obtained in violation of Article 38.23(a). However, this is the species of statutory construction the majority seems to do in this case.

break comes in the form of "attenuation," [3] "independent source," [4] or "inevitable discovery." [5] The State also argues that since the attenuation and inevitable discovery doctrines are specific variations on a common theme and share essentially the same rationale,[6] it would make no sense to hold Article 38.23(a) incorporates the attenuation doctrine, but not the inevitable discovery doctrine.

This argument is consistent with this Court's recent decision in *Johnson v. State*, 871 S.W.2d 744, 749–51 (Tex.Cr.App.1994), which held the federal attenuation doctrine is applicable to Article 38.23(a). By a 7–1 vote, a clear majority of this Court reached this decision by determining that the federal attenuation doctrine does not consider the evidence "obtained" in violation of the law because that doctrine considers the evidence sufficiently attenuated from the taint of the police illegality. See *Johnson*, 871 S.W.2d at 751 (the attenuation doctrine is a method for determining whether the evidence was " 'obtained' " in violation of the law).

Similarly, under *Nix*, the federal inevitable discovery doctrine considers the evidence "sufficiently attenuated" from the taint of the police illegality, if the State can prove the evidence inevitably would have been discovered by means wholly independent of any constitutional violation. See *Nix*, 467 U.S. at 448, 104 S.Ct. at 2511 (when the challenged evidence inevitably would have been discovered "without reference to the police error or misconduct, *there is no nexus sufficient to provide a taint* ") (emphasis supplied). Therefore, if the State meets its burden of proof by a preponderance of the evidence, the federal inevitable discovery doctrine, just like the federal attenuation doctrine, does not consider the evidence "obtained in violation of the law." See *Johnson*, 871 S.W.2d at 750–51.

The issue in this case really involves a straight-forward application of *Johnson*. In *Johnson*, seven members of this Court held the federal attenuation doctrine is applicable to Article 38.23(a). *Johnson*, 871 S.W.2d at 751. Now, barely two years later, four of these seven members decline to follow *Johnson*.

However, the majority says it "makes perfect sense to say that Article 38.23 accommodates the attenuation doctrine, but not inevitable discovery." They explain that nothing in *Johnson* "regarding the attenuation of taint doctrine alters the fact that the plain language of Article 38.23 does not provide for an inquiry into the potential legal acquisition of evidence once it has been established that it was actually 'obtained in violation of' law." So, according to the majority, *Johnson* should be read for the proposition that Article 38.23(a) does not call for a determination of whether the evidence was "obtained in violation of the law" once it has been established the evidence was actually "obtained in violation of the law." I do not read *Johnson* as supporting this kind of circular legal reasoning. The critical thing about *Johnson* was that in determining whether the remedy in Article 38.23(a) applied, *Johnson* relied on federal constitutional law to conclude the federal attenuation doctrine does not consider the evidence "obtained in violation of the law." See *Johnson*, 871 S.W.2d at 751 (the attenuation doctrine is a method for determining whether the evidence was " 'obtained' " in violation of the law).

The majority also attempts to distinguish this case from *Johnson* by explaining that under the attenuation doctrine the causal connection between the illegality and the acquisition of the evidence is broken because "there is a point beyond which the ordinary understanding of 'obtained' just does not apply." However, the attenuation and the inev-

---

**3.** *Brown v. Illinois*, 422 U.S. 590, 601–02, 95 S.Ct. 2254, 2261, 45 L.Ed.2d 416 (1975) ("attenuation" doctrine).

**4.** See *Nix*, 467 U.S. at 441–43, 104 S.Ct. at 2508 ("independent source" doctrine).

**5.** *Nix*, 467 U.S. at 447–49, 104 S.Ct. at 2511 ("inevitable discovery" doctrine).

**6.** The rationale of these doctrines is that admitting the evidence strikes a proper balance between society's interest in deterring police misconduct and the public interest in having juries receive all probative evidence of a crime. See *Nix*, 467 U.S. at 443–45, 104 S.Ct. at 2509; *Brown*, 422 U.S. at 590, 95 S.Ct. at 2254.

itable discovery doctrines begin with the premise that the challenged evidence is " '*in some sense*' the product of illegal governmental activity." See *Nix*, 467 U.S. at 444, 104 S.Ct. at 2509 (emphasis in original). But, the United States Supreme Court has declined to adopt a "but for" rule "that would render inadmissible any evidence that came to light through a chain of causation that began with an illegal arrest." *United States v. Leon*, 468 U.S. 897, 919, 104 S.Ct. 3405, 3414, 82 L.Ed.2d 677 (1984); see also *Brown*, 422 U.S. at 601–03, 95 S.Ct. at 2261. Under the attenuation doctrine, the evidence is admissible if the State can prove it "obtained" the evidence by means that "purge the primary taint." See *Brown*, 422 U.S. at 602, 95 S.Ct. at 2261. This, and not necessarily some actual break in the chain of causation, is what breaks the causal connection between the illegality and the acquisition of the evidence under the attenuation doctrine. See *id.*

Similarly, the State's ability to prove it inevitably would have discovered the evidence by legal means is what breaks the causal connection between the illegality and the acquisition of the evidence under the federal inevitable discovery doctrine. See *Nix*, 467 U.S. at 447–49, 104 S.Ct. at 2511 (when the challenged evidence inevitably would have been discovered "without reference to the police error or misconduct, *there is no nexus sufficient to provide a taint*") (emphasis supplied). Under this doctrine, whether the illegality is the cause-in-fact or a but-for cause of the acquisition of the evidence is simply irrelevant. See *Nix*, 467 U.S. at 447–49, 104 S.Ct. at 2511; *Brown*, 422 U.S. at 601–03, 95 S.Ct. at 2261. If the State meets its burden of proof by a preponderance of the evidence, then federal law treats the evidence, as if, the police, in fact, discovered the evidence "wholly independent of any constitutional violation." See *Nix*, 467 U.S. at 443, 104 S.Ct. at 2508. Therefore, the attenuation and inevitable discovery doctrines call for the same treatment under Article 38.23(a), and *Johnson* should control the disposition of the question presented in this case.

The majority also justifies its holding by creating some kind of distinction between what they call an "exception to the federal exclusionary rule" and an "exception to core prohibitions of the Fourth Amendment." See generally *Garcia*, 829 S.W.2d at 798. The majority says the federal attenuation doctrine falls under the latter while the federal inevitable discovery doctrine falls under the former. As I understand the majority's analysis, if federal law says the evidence is admissible as an "exception to the federal exclusionary rule," then the "plain" language of Article 38.23(a) excludes the evidence. But, if federal law says the evidence is admissible as an "exception to core prohibitions of the Fourth Amendment," then the "plain" language of Article 38.23(a) does not exclude the evidence. This also is more or less what *Garcia* says. From all of this flows the majority's holding in this case.

The majority relies on *Leon* in support of its "exception to federal exclusionary rule" vs. "exception to core prohibitions of the Fourth Amendment" distinction.[7] The majority claims *Leon* supports the proposition that "whether evidence has been illegally obtained is a different and separate question from whether [the federal] exclusionary rule should apply." The majority then claims *Leon* supports the proposition that the federal inevitable discovery doctrine *assumes* the evidence was "obtained in violation of the law." This is not exactly correct. What *Leon* really says is:

"Whether the exclusionary sanction is appropriately imposed in a particular case, our decisions make clear, is '*an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.*'" *Leon*, 468 U.S. at 906, 104 S.Ct. at 3412 (emphasis supplied).

The federal attenuation and inevitable discovery doctrines *assume* only the existence of a constitutional violation. When the federal inevitable discovery doctrine is applied to allow the admission of evidence, no one is

---

**7.** *Leon* addressed the "good faith exception" to the federal exclusionary rule, which, of course, is

not involved in this case.

claiming a defendant's Fourth Amendment rights have not been violated. But, the federal attenuation and inevitable discovery doctrines legally break the causal connection between the constitutional violation and the acquisition of the evidence.

*Leon* sets out various situations where evidence "obtained in violation of the Fourth Amendment" is admissible as an "exception" to the federal exclusionary rule. See *Leon,* 468 U.S. at 910, 104 S.Ct. at 3414–15. However, it is clear the Supreme Court in *Leon* considered the federal attenuation doctrine, like the federal inevitable discovery doctrine, to break the causal connection between any police illegality and the acquisition of the evidence. See *id.*; see also *Nix,* 467 U.S. at 447–48, 104 S.Ct. at 2511 (when the challenged evidence inevitably would have been discovered "without reference to the police error or misconduct, *there is no nexus sufficient to provide a taint*") (emphasis supplied). Therefore, it really makes no difference whether the federal inevitable discovery doctrine is characterized as an "exception to the federal exclusionary rule" or as an "exception to core prohibitions of the Fourth Amendment" because, no matter how it is characterized, the federal inevitable discovery doctrine does not consider the evidence "obtained in violation of the law." See *Leon,* 468 U.S. at 910, 104 S.Ct. at 3414–15; *Nix,* 467 U.S. at 447–48, 104 S.Ct. at 2511; *Brown,* 422 U.S. at 602–03, 95 S.Ct. at 2261.

Moreover, the majority's distinction between "exception to the federal exclusionary rule" vs. "exception to core prohibitions of the Fourth Amendment" is a distinction with no legal significance. The Supreme Court has made clear that its various constitutional decisions in this area have taken into account considerations relating to the exclusionary rule *and* the constitutional principles it is designed to protect. See *Leon,* 468 U.S. at 910–11, 104 S.Ct. at 3414 (the perception underlying various constitutional decisions— that the connection between the police misconduct and evidence of crime may be sufficiently attenuated to permit the use of the evidence at trial—is a product of considerations relating to the exclusionary rule and

the constitutional principles it is designed to protect).

Also, my understanding of how the federal exclusionary rule operates is that it provides a remedy of excluding evidence that is "obtained" in violation of the Constitution. See *Mapp v. Ohio,* 367 U.S. 643, 672–76, 81 S.Ct. 1684, 1701–08, 6 L.Ed.2d 1081 (1961) (Harlan, J., dissenting). If the evidence is admissible under the federal inevitable discovery doctrine or any other "exception" to the federal exclusionary rule, then the evidence has not been "obtained" in violation of the Constitution though there may have been a constitutional violation. See *Leon,* 468 U.S. at 910–11, 104 S.Ct. at 3414.

A fair reading of *Leon, Nix,* and *Brown* is that the various "exceptions" the Supreme Court has created to the federal exclusionary rule, especially the attenuation and inevitable discovery "exceptions," break the causal connection between any illegality and the acquisition of the evidence. This is done for policy reasons such as striking a proper balance between society's interest in deterring police misconduct and the public interest in having juries receive all probative evidence about a crime. See *Nix,* 467 U.S. at 443–45, 104 S.Ct. at 2509. The Legislature also has invited this Court to consider these kinds of factors when construing a provision of the Code of Criminal Procedure. See Article 1.03, V.A.C.C.P.; Article 1.26, V.A.C.C.P. Based on the foregoing, I would hold it is unnecessary to "judicially legislate" the federal inevitable discovery doctrine as an "exception" to Article 38.23(a), because the "plain" language of Article 38.23(a) accommodates this federal doctrine.

Finally, principles of *stare decisis* alone require this Court to hold Article 38.23(a) accommodates the inevitable discovery doctrine. The majority even acknowledges the inevitable discovery doctrine has been a part of this State's jurisprudence since at least 1969—before and after the Supreme Court decided *Nix.* See *Bell v. State,* 724 S.W.2d 780, 787, 793 (Tex.Cr.App.), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860 (1987); *Dickey v. State,* 716 S.W.2d 499, 505 (Tex.Cr.App.1986); *Wicker v. State,* 667 S.W.2d 137, 141–42 (Tex.Cr.App.), cert. de-

nied, 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Vanderbilt v. State,* 629 S.W.2d 709, 722–23 (Tex.Cr.App.1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 169 (1982); *Pitts v. State,* 614 S.W.2d 142 (Tex. Cr.App.1981); *McMahon v. State,* 582 S.W.2d 786 (Tex.Cr.App.1978); *Nicholas v. State,* 502 S.W.2d 169 (Tex.Cr.App.1973); *Johnson v. State,* 496 S.W.2d 72 (Tex.Cr.App. 1973); *Noble v. State,* 478 S.W.2d 83 (Tex.Cr. App.1972); *Santiago v. State,* 444 S.W.2d 758 (Tex.Cr.App.1969); see also *Garcia,* 829 S.W.2d at 801–03 (Miller, J., concurring) (inevitable discovery doctrine was applicable in this State long before the Supreme Court decided *Nix* ).

These are this Court's *majority* opinions which have applied the inevitable discovery doctrine. If a majority of this Court agrees on a principle of law, then that constitutes a "holding" of this Court. See 40 G. Dix & R. Dawson, Criminal Practice and Procedure at 14–15 (Texas Practice 1995). Principles of *stare decisis* require this Court to follow its earlier majority holdings. This is so basic that it requires no citation to authority.

With the exception of *Bell,* the majority declares that this Court's prior majority holdings "can hardly be considered *stare decisis* " because they "appear to have been decided on the basis of the federal exclusionary rule." My response to this is, "so what." The point is a *majority* of this Court has held on numerous occasions that the inevitable discovery doctrine is part of the jurisprudence of this State. This Court should continue to follow these holdings and leave any changes to Article 38.23 to the legislature. See *Garcia,* 829 S.W.2d at 802 fn2 (Miller, J., concurring) (once a court has interpreted a statute, subsequent legislative inaction amounts to approval of that court's interpretation).

In addition, the majority's distinction between "exception to the federal exclusionary rule" vs. "exception to core prohibitions of the Fourth Amendment" is a meaningless distinction. So, it really makes no difference whether these cases might have been decided on the basis of the federal exclusionary rule.

This leaves *Bell.* Even the majority has to acknowledge that a *majority* of this Court in

*Bell* held the attenuation doctrine was applicable to Article 38.23(a) and "may have similarly held as to the inevitable discovery doctrine." The majority needs to read *Bell* again. In *Bell,* a *majority* of this Court was addressing Article 38.23 when it held the evidence was admissible under the inevitable discovery doctrine. See *Bell,* 724 S.W.2d at 787, 793. However, the majority refuses to follow *Bell* because it contains no "analysis whether the language of Article 38.23 'accommodates' " the inevitable discovery doctrine.

Instead of following this Court's prior *majority* holdings, the majority decides to adopt a four-judge *plurality* decision in *Garcia* because it is the "only opinion to conduct" an analysis of whether Article 38.23(a) accommodates the inevitable discovery doctrine. The following is the substantive "analysis" from that plurality opinion in *Garcia:*

> "[Article 38.23(a) ], on its face, absolutely requires the exclusion of all evidence seized in violation of the Fourth Amendment, and because the federal inevitable discovery doctrine is not an exception to core prohibitions of the Fourth Amendment, but only an exception to the federal exclusionary rule, the mandate of article 38.23 to exclude any evidence obtained in violation of the United States Constitution does not, even by necessary implication, require a decision about whether questioned evidence would inevitably have been discovered anyway." *Garcia,* 829 S.W.2d at 798.

This is more or less the extent of *Garcia's* "analysis." Cases such as *Bell* and *Vanderbilt* contain at least as much "analysis" as this. More importantly, this Court decided *Johnson* after *Garcia* and *Garcia* is completely inconsistent with this Court's more recent majority opinion in *Johnson.*

In addition, that this Court's earlier *majority* opinions do not contain enough "analysis" to suit the majority in this case should be irrelevant. The point is that the inevitable discovery doctrine has been a part of this State's jurisprudence since at least 1969. And, people have come to rely on this. It should require more than a poorly-reasoned

*plurality* decision to depart from this Court's well-settled jurisprudence.

This brings us to Judge Baird's concurring opinion. Judge Baird's position is "we must presume the Legislature approved of *Garcia's* interpretation of art. 38.23." However, a plurality opinion decides only the particular dispute before the Court and is of no precedential value. See *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Cr.App.1992).

In *Garcia*, a four-judge plurality decided the federal inevitable discovery doctrine does not apply to Article 38.23(a). However, apparently another four-judge plurality in *Garcia*—Judges White, Miller, Campbell and *Baird*—would have decided the federal inevitable discovery doctrine is applicable to Article 38.23(a). So, the question becomes which plurality position in *Garcia* are we to presume the Legislature approved? Legislative inaction after *Garcia* has no bearing on the question presented by this case, because a majority of this Court in *Garcia* did not agree that the federal inevitable discovery doctrine was inapplicable to Article 38.23(a). Moreover, given this Court's numerous majority holdings over the years and the Legislature's failure to overturn them, Judge Baird's current position that this Court should now presume legislative approval of a single plurality opinion in *Garcia* is untenable.

Citing *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Cr.App.1992), Judge Baird claims the Legislature "does respond to plurality opinions." However, a *majority* of this Court in *Grunsfeld* did agree that the 1989 legislative amendments to Article 37.07, V.A.C.C.P.,[8] prohibited the admission of unadjudicated extraneous offenses as part of a defendant's "prior criminal record." See *Grunsfeld*, 843 S.W.2d at 522–48. And, as Judge Baird correctly points out, the Legislature acted to amend Article 37.07 to reverse this Court's majority holding in *Grunsfeld*.

In any event, Judge Baird's point is we should presume legislative approval of a plurality opinion in *Garcia* because the Legislature has *failed* to act on it. Obviously, the Legislature did act in the *Grunsfeld* situation. Judge Baird's *Grunsfeld* analogy to this case is inapposite. The point is that if this Court is to presume anything from the Legislature's failure to act, as Judge Baird claims we should, then it makes more sense to presume legislative approval of this Court's numerous majority holdings dating back to at least 1969 instead of a single plurality opinion. With respect, Judge Baird has yet to advance a principled reason for deviating from the position he took in *Garcia*.

The majority also holds "a direct appellate court must conduct a Rule 81(b)(2) harm analysis *sua sponte*, without the necessity of prompting by the State" in cases like this. While I agree with the majority's ultimate disposition of this issue, I must disagree with their "analysis," such as it is.

The majority cites *Weatherford v. State*, 828 S.W.2d 12, 13 (Tex.Cr.App.1992), to support their holding. However, *Weatherford* has nothing to do with the issue presented here. "Much more analysis is necessary before the Court may confidently say" that an intermediate appellate court must *sua sponte* conduct a Rule 81(b)(2) harm analysis in cases like this, especially since the majority in disposing of the "inevitable discovery" issue has just finished trashing twenty-five years of this Court's jurisprudence because it does not contain enough "analysis." See *Autran v. State*, 887 S.W.2d 31, 42 (Clinton, J., concurring).

Finally, appellant's brief advances two arguments, supported by citation to various opinions of this Court, claiming the Court of Appeals did not err to decline to *sua sponte* conduct a Rule 81(b)(2) harm analysis. First, appellant argues that since this Court has held Rule 81(b)(2) places the burden on the State to prove an error did not contribute to the verdict or punishment, then the State has the burden to raise the issue in a timely manner. Second, appellant argues the State is trying to argue an issue it waived in the Court of Appeals "under the guise of a

---

8. These amendments came about as a result of a prior erroneous interpretation of Article 37.07 by this Court. See *Grunsfeld*, 843 S.W.2d at 523;

*Murphy v. State*, 777 S.W.2d 44 (Tex.Cr.App. 1989) (op. on reh'g).

'harmless error analysis.'" The majority opinion wholly fails to "analyze" these contentions. The majority's lack of "analysis" on the Rule 81(b)(2) issue creates a risk that twenty-five years from now this Court could decline to give *stare decisis* effect to that part of the majority opinion addressing the Rule 81(b)(2) issue because it does not contain enough "analysis."

With these comments, I join only that part of the Court's judgment remanding the case to the Court of Appeals to conduct a Rule 81(b)(2) harm analysis. I dissent to everything else.

WHITE and KELLER, JJ., join this concurring and dissenting opinion.

MANSFIELD, Judge, dissenting.

Because I believe Texas Code of Criminal Procedure Article 38.23 does not bar the use in Texas of the United States Supreme Court's inevitable discovery doctrine announced in *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), I respectfully dissent.

Appellant was observed by Southlake Police Officer Hart on the morning of September 14, 1989 in a neighborhood that was having problems with burglaries. As Officer Hart approached appellant's truck, appellant ducked. Hart proceeded up the street and parked. He then observed appellant getting out of his truck, walking up to a nearby house, knocking on the door and then putting his hand on the door knob. Appellant then went around to the back of the house out of Hart's sight. A short time later, appellant returned to the front of the house, looked around, got into his truck, and drove off.

Hart then pulled appellant over a few blocks away. When he approached appellant to ask for proof of insurance and his driver's license, Hart observed a prybar sticking out from under the driver's seat as well as screw drivers and a pair of gloves on the floor in front of the front seat. Appellant stated he

was in the area to give an estimate on a paint job at 1379 Flamingo and admitted he had no driver's license. Hart ordered appellant to get out of the vehicle and noticed two small jewelry boxes on the seat next to where appellant had been sitting. Hart opened the boxes and found five rings, one of which had a name engraved on it which was not appellant's. Appellant claimed he got the jewelry at a flea market the previous day in Roanoke.

Hart arrested appellant for driving without a license and read appellant his *Miranda* warnings. Hart summoned a wrecker to tow away the truck and inventoried the jewelry. Appellant was released from custody that afternoon.

Appellant was subsequently convicted by a jury of burglary of a habitation. The jury also found two enhancement paragraphs to be true. The jury assessed punishment at ninety years confinement in the Texas Department of Criminal Justice—Institutional Division. The Second Court of Appeals reversed appellant's conviction and remanded the cause for a new trial.[1] *Daugherty v. State,* 876 S.W.2d 522 (Tex.App.—Fort Worth 1994). This Court subsequently granted the State's and the State Prosecuting Attorney's petitions for discretionary review. Specifically, we granted the State Prosecuting Attorney's petition for discretionary review to determine if the federal inevitable discovery doctrine is applicable under Texas law, that is, Texas Code of Criminal Procedure Article 38.23, the Texas statutory exclusionary rule. The court of appeals, relying on this Court's plurality opinion in *Garcia v. State,* 829 S.W.2d 796 (Tex.Crim. App.1992), held there was no inevitable discovery doctrine exception to Article 38.23.

Texas Code of Criminal Procedure Article 38.23 provides:

> (a) No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the

---

1. The court of appeals found the trial court erred in admitting evidence of the jewelry and other items seized from appellant, holding the search in question could not be justified as a valid search incident to an arrest since the search

preceded the arrest. Furthermore, the court of appeals found the trial court erred in relying on the inevitable discovery doctrine to justify the search in question, citing *Garcia, supra.*

United States of America, shall be admitted in evidence against the accused on the trial of any criminal case . . .

(b) It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

To determine if the inevitable discovery doctrine exists in Texas, given Article 38.23, it is necessary to analyze both the federal and Texas Constitutions and Article 38.23.

## I. The Inevitable Discovery Doctrine is Well–Established As an Exception to the Federal Exclusionary Rule.

"The right of the people to be secure in their persons, houses papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., Amendment IV.

As a means to give effect to the Fourth Amendment's prohibition of unreasonable searches and seizures, the Supreme Court developed the exclusionary rule. *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Evidence obtained as a result of a warrantless search and seizure in violation of a defendant's Fourth Amendment rights by federal authorities could not be admitted into evidence against him at trial. There is no federal statutory exclusionary rule comparable to Article 38.23. The exclusionary rule was made applicable to the states and to local entities in 1961. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).

The Supreme Court has, for some time, recognized a so-called "good faith" exception to the exclusionary rule. The exclusionary rule does not bar admission of evidence obtained by police officers acting in reasonable reliance on a search warrant issued by a neutral magistrate but later found to be invalid for lack of probable cause. *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). See also *Maryland v.*

*Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). The good faith exception to the exclusionary rule has also been found to apply to a warrantless search conducted in good faith pursuant to a statute found later to be unconstitutional. The good faith exception also was found to apply to a search and seizure incident to an arrest based on a computer error which erroneously indicated to the police officer there was an outstanding arrest warrant against the defendant. *Illinois v. Krull,* 480 U.S. 340, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); *Arizona v. Evans,* —— U.S. ——, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995). Evidence illegally obtained in violation of the Fourth Amendment may be used to impeach defendant should he testify. *James v. Illinois,* 493 U.S. 307, 110 S.Ct. 648, 107 L.Ed.2d 676 (1990).

The Supreme Court and other federal courts have recognized another exception to the exclusionary rule—the inevitable discovery doctrine.

In *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), the Supreme Court, in a murder case, explained the rationale behind the exclusionary rule:

It is clear that the cases implementing the exclusionary rule "begin with the premise that the challenged evidence is in *some sense* the product of illegal government activity." *United States v. Crews,* 445 U.S. 463, 471, 100 S.Ct. 1244, 1250 [63 L.Ed.2d 537] (1980). Of course, this does not end the inquiry. If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means—here the volunteers' search—then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience and common sense.

The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections. This Court has accepted

the argument that the way to ensure such protections is to exclude evidence seized as a result of such violations notwithstanding the high cost of letting persons obviously guilty go unpunished for their crimes. On this rationale, the prosecution is not to be put in a better position than it would have been if no illegality had transpired.

*Nix,* 467 U.S. at 441–45, 104 S.Ct. at 2508–09.

"Exclusion of physical evidence that would inevitably be discovered adds nothing to either the integrity or fairness of a criminal trial." *Nix,* 467 U.S. at 446, 104 S.Ct. at 2510.[2,3]

The Court demonstrates the absurdity of excluding evidence that would have been inevitably discovered by legal means merely because its initial discovery was by illicit methods. In effect, the prosecution would be left in a worse position had no police error or misconduct occurred should the exclusionary rule be interpreted to bar forever use of the evidence in question merely because its initial discovery was in violation of the exclusionary rule. By permitting the State to introduce evidence that would have been obtained inevitably by licit means—absent any police misconduct—the State and the defendant are placed in the same position as if no police misconduct had ever taken place: the State has gained no advantage and the defendant has suffered no prejudice.[4]

It is clear, under federal constitutional law, the inevitable discovery doctrine is well-established.

## II. The Inevitable Discovery Doctrine Is Not Contrary to the Texas Constitution or to Article 38.23 and Should Be Recognized by This Court.

The Texas Constitution, Article I, Section 9 provides:

"The people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches, and no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." Article I, Section 9 of the Texas Constitution is essentially identical to the Fourth Amendment to the United States Constitution.

This Court has generally followed United States Supreme Court Fourth Amendment jurisprudence in interpreting Article I, Section 9. We are free, however, to interpret Article I, Section 9 to find it offers greater protection against unreasonable searches and seizures than its federal counterpart. *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991). To date, however, a majority of this Court has declined to do so. In *Autran v. State,* 887 S.W.2d 31 (Tex.Crim.App.1994) (plurality opinion), four members of this Court did find, in a case concerning an inventory search of closed containers found in the trunk of a vehicle, Article I, Section 9 would require a warrant to search the containers whereas the Fourth Amendment generally

**2.** In *Nix,* the police obtained information as to the location of the victim's body from the defendant as the result of questioning found to be in violation of his Sixth Amendment right to counsel. The Supreme Court found evidence of the body, articles and photos of clothing and the results of the autopsy were admissible at the defendant's retrial under the inevitable discovery doctrine. (The Iowa Supreme Court found by a preponderance of the evidence that the body would have been discovered within a short time in essentially the same condition as it was actually found absent the information illegally obtained from the defendant.)

**3.** The Court notes that the "vast majority" of all courts, both state and federal, recognize an inevitable discovery exception to the exclusionary rule. *Nix,* 467 U.S. at 440, footnote 2, 104 S.Ct.

at 2507, footnote 2. I must respectfully disagree with the majority that the inevitable discovery doctrine's entire foundation is one sentence in *Nix.*

**4.** We also note the Supreme Court has held evidence found pursuant to execution of a valid search warrant is admissible provided the information used to obtain the warrant is wholly unconnected to information uncovered during an earlier, invalid search, i.e., the "independent source" doctrine. *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984); *Murray v. United States,* 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (citing *Nix, supra,* 487 U.S. at 540, 108 S.Ct. at 2535). The independent source doctrine is similar to the inevitable discovery doctrine. *Nix,* 467 U.S. at 443–45, 104 S.Ct. at 2509.

permits warrantless inventory searches. Accordingly, I would hold that the inevitable discovery doctrine's application to the present case is not barred by Article I, Section 9 of the Texas Constitution.

Article 38.23 (or rather, its predecessor, Art. 727a) originally was enacted seventy years ago, ten years after the Supreme Court's holding in *Weeks, supra,* which created the federal exclusionary rule. Noting *Weeks* applied only to the federal government, it is reasonable to conclude the Legislature's enactment of Article 38.23 was intended to extend to the citizens of Texas the same protection against unreasonable searches and seizures by state and local governmental entities that they had been given by the United States Supreme Court against Fourth Amendment violations committed by the federal government. The Legislature subsequently added Article 38.23(b) to incorporate a "good faith exception" so that evidence obtained by an officer acting in good faith reliance upon a warrant issued by a neutral magistrate based on probable cause would not be inadmissible due to the exclusionary rule as a result of a defect found in the warrant subsequent to its execution.

The majority, relying on our plurality opinion in *Garcia v. State,* 829 S.W.2d 796 (Tex. Crim.App.1992), holds, in effect, that because Article 38.23's plain language does not mention the inevitable discovery doctrine, then, by definition, its use in Texas is precluded. I do not agree. The majority does not offer any legislative history or other evidence of legislative intent in support of its position that Article 38.23 was intended to be anything more or less than its federal, judge-made equivalent. Indeed, carried to its logical conclusion, the majority's holding would preclude, as violative of Article 38.23, such

exceptions to the exclusionary rule as the emergency or exigent circumstances doctrine and the attenuation of taint doctrine, thereby casting doubt on our holdings in *Johnson v. State,* 871 S.W.2d 744 (Tex.Crim.App.1994) and *Bass v. State,* 732 S.W.2d 632 (Tex.Crim. App.1987). In other words, this Court would be barred from interpreting Article 38.23 so as to take into account evolving Supreme Court jurisprudence with respect to the federal exclusionary rule. I submit the Legislature did not intend this.[5]

I would agree that if this Court found the inevitable discovery doctrine to be invalid under Article I, Section 9, then its use would also be precluded under Article 38.23. The majority does not hold this, however. I also understand the majority's point that the exclusionary rule bars admission of evidence obtained in violation of state or federal law, but there are exceptions which do allow admission of such evidence *even though it was obtained in violation of the law.* Yet the majority, in my opinion, ignores the most significant aspect of the inevitable discovery doctrine: while the evidence may have been initially *obtained illegally,* it is admissible *only* if the State can show, *by a preponderance of the evidence,* that it would have been *inevitably obtained by legal means.* It is this significant aspect, in my opinion, of the inevitable discovery doctrine that does not preclude its incorporation under Article 38.23.[6]

I respectfully dissent.

---

5. The concurring opinion notes that had the Legislature intended to incorporate the inevitable discovery doctrine into Article 38.23, it has had at least two opportunities since *Garcia* to do so. First, *Garcia* is a plurality opinion with a limited precedential value; hence, legislative action would be premature, and the Legislature's failure to act has little significance. Second, should we find Article 38.23 not to preclude the inevitable discovery doctrine, the Legislature certainly could amend Article 38.23 so as to negate our finding.

6. If the search of the jewelry boxes had occurred after the arrest, it would have been valid as a search incident to a concededly valid arrest. This application of the inevitable discovery doctrine would allow admission into evidence of the results of the search which occurred prior to the arrest because it would have been inevitably discovered pursuant to a legal, post-arrest search.