ACCEPTED
06-14-00208-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
7/13/2015 12:00:00 AM
DEBBIE AUTREY
CLERK

CAUSE NUMBER 06-14-00208-CR
IN THE
COURT OF APPEALS

SIXTH APPELLATE JUDICIAL DISTRICT OF TEXAS
AT TEXARKANA, TEXAS

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS
7/13/2015 9:07:00 AM
DEBBIE AUTREY
Clerk

APPEAL FROM THE 8TH JUDICIAL DISTRICT OF HOPKINS COUNTY, TEXAS

Trial Cause No. 1323670

TONY DEWAYNE CRAYTON
Appellant

V.

THE STATE OF TEXAS,
Appellee

BRIEF FOR APPELLANT

Martin Braddy
Attorney at Law
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(500) 885-2704 fax

1

# IDENTITY OF PARTIES

Pursuant to Texas Rule of Appellate Procedure 38(a), the following is a list of all parties to the trial court's judgment and the names and addresses of all trial and appellate counsel:

**APPELLANT:**
Tony Dewayne Crayton

Appellate and Trial Counsel
Martin Braddy
121 Oak Avenue, Suite A
Sulphur Springs, TX 75482
(903) 885-2040
(903) 500-2704 fax

**APPELLEE:**
The State of Texas

Honorable Will Ramsay
District Attorney
8th Judicial District
110 Main Street
Sulphur Springs, TX 75482
(903) 885-0641
(903) 885-0640 fax

**TRIAL COURT:**
8th Judicial District Court
Hopkins County, Texas

Judge Eddie Northcutt
118 Church St.
Sulphur Springs, TX 75482
Phone: (903) 438-4022

# TABLE OF CONTENTS

Table of Contents                                                                    3

Index of Authorities                                                              4-7

Statement of the Case                                                              7

Issues Presented                                                                   7

Statement of Facts                                                              7-13

Summary of Argument                                                        13-14

Argument                                                                           14

   I. Trial Court Improperly Considered a Competency Report              14

   II. Did the Trial Court Err in Overruling the Motion to                    34

Suppress Evidence

Conclusion and Prayer                                                            41

Certificate of Service                                                            42

Word Count Certificate                                                           43

## INDEX OF AUTHORITIES

**Cases**

Amador v. State, 221 S.W.3d 666, 672 (Tex.Crim.App.2007)    33

Best v. State, 118 S.W.3d 857, 862 (Tex.App.-Fort Worth 2003, no pet.)    33

Bullcoming v. New Mexico, —— U.S. ——, ——, 131 S.Ct. 2705, 2715, 180 L.Ed.2d 610 (2011)    18

Burt v. State, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013)    13

Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)    20

Cobb v. State, 95 S.W.3d 664, 666 (Tex.App.–Houston [1st Dist.] 2002, no pet.)    13

Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)    16, 17, 18

Davis v. State, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006)    21

De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008)    17

Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986)    21

Douds v. State, 434 S.W.3d 842, 861-62 (Tex. App.—Houston [14th Dist.] 2014), *petition for discretionary review granted* (Sept. 17, 2014)    35

Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App.2005)    33

George v. State, 20 S.W.3d 130, 140 (Tex. App.—Houston [14th Dist.] 2000, *pet. ref'd*)    29

Gilbert v. State, 493 S.W.2d 783, 783 (Tex. Crim. App. 1973)     38

Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex.Crim.App.2006)     13

Hensarling v. State, 829 S.W.2d 168, 170-71 (Tex. Crim. App. 1992)     28, 29

Howard v. State, 617 S.W.2d 191, 193 (Tex.Crim.App.1979) (*op. on reh'g*)     34

Issa v. State, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992)     13, 14

Keen v. State, 626 S.W.2d 309, 313 (Tex. Crim. App. 1981 *overruled on other grounds*)     38

Kothe v. State, 152 S.W.3d 54, 62 (Tex.Crim.App.2004)     33

Langham v. State, 305 S.W.3d 568, 576 (Tex.Crim.App.2010)     18

Lee v. State, 418 S.W.3d 892, 896 (Tex. App.—Houston [14th Dist.] 2013), *petition for discretionary review refused* (Mar. 12, 2014)     17, 19

McGee v. State, 105 S.W.3d 609, 615 (Tex.Crim.App.), *cert. denied,* 540 U.S. 1004, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003)     33

McNairy v. State, 835 S.W.2d 101, 106–07 (Tex.Crim.App.1991)     36

Melendez–Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)     18, 19

Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)     34

Ramirez v. State, 105 S.W.3d 730, 744 (Tex. App.—Austin 2003, no pet.)     36

Reynolds v. State, 506 S.W.2d 864, 864 (Tex. Crim. App. 1974) ..... 38

Rickels v. State, 108 S.W.3d 900, 902 (Tex.Crim.App.2003) ..... 13

Smith v. State, 297 S.W.3d 260, 277 (Tex. Crim. App. 2009) ..... 20

State v. Daugherty, 931 S.W.2d 268, 269 (Tex. Crim. App. 1996) ..... 34

State v. Stewart, 282 S.W.3d 729, 737 (Tex. App.—Austin 2009, *no pet.*) ..... 33

Torres v. State, 182 S.W.3d 899, 902 (Tex.Crim.App.2005) ..... 33

Wall v. State, 184 S.W.3d 730, 742 (Tex.Crim.App.2006) ..... 17

Wood v. State, 299 S.W.3d 200, 208 (Tex. App.—Austin 2009, pet. ref'd) ..... 17, 19

Young v. State, 283 S.W.3d 854, 872 (Tex.Crim.App.2009) ..... 33

United States v. Rubin, 474 F.2d 262, 268 (3d Cir.1973) ..... 36

**Statutes**

Tex. Crim. Proc. Code Ann. § art. 18.04 (West) ..... 38

Tex. Crim. Proc. Code Ann. § art. 38.23 (West) ..... 34

Tex. Crim. Proc. Code Ann. § art. 46B (West) ..... 16, 19, 23

Tex. R. App. Proc. 33.1(a) ..... 13

Tex. R. App. Proc. 44.2 ..... 20

Tex. R. Evid. Rule 201 (b) ..... 14, 15

Tex. R. Evid. Rule 605                                                                              28

U.S. Const. amend. IV                                                                              33

## STATEMENT OF THE CASE

Appellant was indicted in Cause Number 1323670 for Murder. Appellant pled "Not Guilty" and waived his right to a jury trial. The trial court found Appellant guilty and set the punishment at fifty years in the Institutional Division of the Texas Department of Criminal Justice and no fine. The trial court certified Appellant's right to appeal and Appellant timely filed a Notice of Appeal.

## ISSUES PRESENTED

Did the trial court err in considering the competency evaluation report filed by Dr. Michael Pittman?

Did the trial court err in denying Appellant's Motion to Suppress: Seizure Without Warrant?

Did the trial court err in denying Appellant's Motion to Suppress based on an improperly executed search warrant?

## STATEMENT OF FACTS

Appellant and Tyler Crayton were married in August 2008 after dating the previous two years. (R.R. Vol. 7 pg. 44-5). Their son, Preston, was born in July

2007. (R.R. Vol. 7 pg. 63). They lived in Sulphur Springs together with Preston, her mother Mildred Townsend and her brother Jay Townsend. (R.R. Vol. 7 pg. 42-3). Their marriage was strained by Appellant's infidelities and his leaving the household for periods of time. (R.R. Vol. 7 pg. 69). However by all accounts, Appellant had never been violent towards Ms. Crayton. (R.R. Vol. 6 pg. 166-9, Vol. 7 pg. 68). Appellant was a passive individual that always walked away from conflict within the family. (R.R. Vol. 6 pg. 166-9, Vol. 7 pg. 68).

On October 22, 2013, Ms. Crayton was killed in her home in Sulphur Springs. (R.R. Vol. 7 pg. 69). She died of "sharp-force injuries of the neck" involving multiple stab wounds. (R.R. Vol. 7 pg. 29, SX-113). The cause of death was listed as "homicide." (R.R. Vol. 7 pg. 29, SX-113).

The night before Ms. Crayton's death, Appellant had attended counseling with his wife's mother, to whom he stated "he had finally realized God loved him." (R.R. Vol. 7 pg. 77). That night, Appellant was at the kitchen table reading his Bible as Ms. Townsend went to bed. (R.R. Vol. 7 pg. 77). His belongs were packed in bags and sitting in the hall of the residence that night. (R.R. Vol. 7 pg. 75-6). Ms. Townsend was aware that her daughter was planning on talking to Appellant the next day about their relationship. (R.R. Vol. 7 pg. 78). Appellant slept in the recliner in the living room of the residence that night. (SX-71).

Appellant often slept in that recliner prior to Ms. Crayton's death due to his desire to protect his family from his ex-girlfriend, Sherry Lewis. (R.R. Vol. 7 pg. 76-7). Appellant believed that Sherry Lewis was a witch and had power over him and he feared that she would do harm to his family at their house. (R.R. Vol. 7 pg. 84).

Ms. Townsend did not see Appellant at the residence the next morning prior to her leaving for work. (R.R. Vol. 7 pg. 77). This was not unusual because Appellant would sometimes take walks early in the morning. (R.R. Vol. 7 pg. 78-9). She informed law enforcement during her interview that she did not see Appellant that morning prior to leaving the residence for work. (R.R. Vol. 7 pg. 88-9). Jay Townsend also informed law enforcement that he had not seen Appellant that morning either, but heard water running and assumed he was there, even though he said it could have been a toilet that often runs. (R.R. Vol. 6 pg. 207).

When Ms. Townsend was informed that her daughter had been killed, her first thought was that Sherry Lewis did it and never considered Appellant to be a suspect. (R.R. Vol. 7 pg. 82). Ms. Townsend considered Sherry Lewis to be capable of murder and believed that she had a motive to kill her daughter and was likely to have been the person who killed her daughter. (R.R. Vol. 7 pg. 82, 89).

9

Further, she did not believe Appellant to be capable of murder nor did she believe Appellant committed the murder. (R.R. Vol. 7 pg. 87-8).

Ms. Townsend told law enforcement about a prior incident involving Sherry Lewis coming to her house demanding to talk to Appellant and causing such a disturbance that they called the police to make her leave. (R.R. Vol. 7 pg. 90-1). She also described Sherry Lewis coming to her house on other occasions that did not necessitate police intervention. (R.R. Vol. 7 pg. 91).

On October 22, officers were dispatched to the residence to respond to an open 911 call with no voices on it. (R.R. Vol. 6 pg. 54-5, 82). Ms. Crayton was found dead in the residence. (R.R. Vol. 6 pg. 61). A little more than an hour after arriving at the residence, officers were dispatched to the League Street overpass at Interstate 30 in Sulphur Springs. (R.R. Vol. 6 pg. 68). Officers found Appellant lying in the Westbound lane of Interstate 30. (R.R. Vol. 6 pg. 68-78). Appellant had sustained significant injuries and was unable to respond to questions. (R.R. Vol. 2 pg. 43-5, Vol. 6 pg. 79-80).

Appellant had no identification on his person and was not positively identified at the scene. (R.R. Vol. 2 pg. 49, 66, 85-6). Officer Amanda Weatherford testified that she believed she heard some officers begin calling him "Tony," but could not remember which officers. (R.R. Vol. 2 pg. 55). Officer Antwone Young believed that officer's that had been at the murder scene knew

him to be the suspect although he could not say which officers or why they believed that. (R.R. Vol. 2 pg. 79-82). The only officers that had been to the murder scene on location at the highway were Officer Amanda Weatherford and Officer Jay Sanders. Officer Sanders testified that he had "just kind of a gut feeling" that he was the suspect. (R.R. Vol. 2 pg. 92).

While Appellant laid on the highway being treated by emergency medical personnel, officers seized as evidence in the murder investigation what they believed to be his shoes, glasses and baseball hat. (R.R. Vol. 2 pg. 47-50). The shoes were seized as evidence at 2:26 pm on October 22, 2013. (R.R. Vol. 2 pg. 49). Shortly after seizing the shoes, Officer Weatherford took Appellant's left hand and, without his consent, opened it up exposing the inside webbing between the thumb and index finger. (R.R. Vol. 2 pg. 51). Officers then took a picture of a cut on that area as it was held open by an individual wearing latex gloves. (SX-15). The seized evidence was bagged, logged as evidence, taken to the Sulphur Springs Police Department and placed into the evidence locker. (R.R. Vol. 2 pg. 56). Appellant was later transported to the hospital by ambulance. (R.R. Vol. 2 pg. 66-7). When officers arrived at the police department, they were able for the first time to positively identify Appellant as the individual they encountered on the highway. (R.R. Vol. 2 pg. 59-60).

Officer Young followed Appellant to the hospital to collect his clothing, and any other items, as evidence. (R.R. Vol. 2 pg. 65). At the hospital, medical personnel asked him if he wanted to take possession of Appellant's clothing and he answered affirmatively. (R.R. Vol. 2 pg. 67-9). At 3:15 pm on October 22, 2013, Officer Young seized them, sealed them in an evidence bag and took them to the Sulphur Springs Police Department where he released them to Detective Fox. (R.R. Vol. 2 pg. 71-2, 77-8).

On October 22, 2013, Detective Fox presented an Affidavit for Search Warrant to District Judge Eddie Northcutt (SX-56). Judge Northcutt issued a Search Warrant pursuant to that affidavit at 4:50 pm on that date. (SX-56). Detective Fox executed the Search Warrant on Appellant's clothing, shoes, hat and glasses at the Sulphur Springs Police Department where they were located after having been seized, sealed, bagged and logged as evidence by other officers. (R.R. Vol. 2 pg. 169-171). Detective Fox executed the Search Warrant on Appellant's body to collect blood samples, fingernail clippings, oral swabs and blood swabs from his fingernail while Appellant was in Mother Frances Hospital in Tyler, Texas located in Smith County. (R.R. Vol. 6 pg. 116-18).

On October 29, 2013, following his release from the hospital, Appellant was transported to the Hopkins County Jail. (R.R. Vol. 6 pg. 124). There, he was interrogated by Detective Fox and Texas Ranger John Vance. (R.R. Vol. 6 pg.

124).  The interrogation produced a muttering, rambling, disjointed statement that the Court Reporter could not transcribe.  (R.R. Vol. 6 pg. 127, SX-71).  Detective Fox testified that Appellant confessed to the murder of his wife during that interrogation.  (R.R. Vol. 6 pg. 140).

In announcing its verdict, after careful and lengthy consideration, the trial court informed the parties that it took "judicial notice of the file" on its on motion during deliberations in order to review a report from Dr. Pittman following a competency evaluation.  (R.R. Vol. 8 pg. 18).  Particularly, the trial court referenced the portion of the report indicating that Appellant was faking his mental health issues.  (R.R. Vol. 8 pg. 18-9).  The trial court found Appellant guilty as charged in the indictment.  (R.R. Vol. 8 pg. 22).

In announcing its verdict regarding sentencing, the trial court again referenced Dr. Pittman's report in finding that Appellant had been faking his mental health issues and, therefore, had no significance as mitigation in this case.  (R.R. Vol. 8 pg. 107-8).  The trial court sentenced Appellant to fifty years and no fine.  (RR Vol. 8 pg. 109).  Appellant filed notice of Appeal.  (C.R. pg. 102).

## SUMMARY OF ARGUMENT

The trial court improperly took judicial notice of the report issued by Dr. Pittman.  During its deliberations, the trial court took judicial notice of the file and reviewed the report contained within it.  This resulted in a violation of Appellant

13

6th Amendment constitutional right to confront and cross-examine the witnesses against him under <u>Crawford</u>, of Rule 201 of the Texas Rules of Evidence and of Article 46B.007 of the Texas Code of Criminal Procedure.

The trial court improperly denied Appellant's Motion to Suppress: Seizure Without Warrant. Law enforcement seized several items of evidence without first obtaining a warrant in violation of Appellant's Fourth Amendment Rights and the Texas Code of Criminal Procedure. The State failed to prove a "specifically defined and well-established" exception to the warrant requirement.

The trial court improperly denied Appellant's Motion to Suppress. The officers executing the search warrant did not have jurisdiction to conduct the search and seizure of the evidence. The State failed to prove that the execution of the search warrant was assisted by an officer with proper jurisdiction.

**ARGUMENT**

## I. TRIAL COURT IMPROPERLY CONSIDERED A COMPETENCY REPORT

The trial court improperly took judicial notice of the report issued by Dr. Pittman. During its deliberations, the trial court took judicial notice of the file and reviewed the report contained within it. This resulted in a violation of Appellant 6th Amendment constitutional right to confront and cross-examine the witnesses

14

against him under <u>Crawford</u>.  This also violated Rule 201 of the Texas Rules of Evidence providing for the proper procedure of judicial notice.  This also violated Article 46B.007 of the Texas Code of Criminal Procedure prohibiting the use of the report and testimony regarding the evaluation of Appellant's competency to stand trial.

### A. Preservation of Error

"Ordinarily, to preserve an issue for appellate review, an appellant must have first raised the issue in the trial court." <u>Burt v. State</u>, 396 S.W.3d 574, 577 (Tex. Crim. App. 2013) *citing* Tex. Rule App. Proc. 33.1(a); <u>Gillenwaters v. State</u>, 205 S.W.3d 534, 537 (Tex.Crim.App.2006).

However the Court of Criminal Appeal in <u>Burt v. State</u> noted, "[t]he requirement that an objection be raised in the trial court assumes that the appellant had the opportunity to raise it there." <u>Burt v. State</u>, 396 S.W.3d at 577, *citing* <u>Issa v. State</u>, 826 S.W.2d 159, 161 (Tex.Crim.App.1992) (permitting appellant to raise his objection for the first time in a motion for new trial since "appellant had no opportunity to object to the trial court's action until after that action was taken."). The <u>Burt</u> Court held that "if an appellant never had the opportunity to object, then he has not forfeited error." <u>Burt v. State</u>, 396 S.W.3d at 577-78, *citing* <u>Rickels v. State</u>, 108 S.W.3d 900, 902 (Tex.Crim.App.2003); <u>Cobb v. State</u>, 95 S.W.3d 664, 666 (Tex.App.–Houston [1st Dist.] 2002, no pet.).

The Court of Criminal Appeals in <u>Issa v. State</u> held that where an "appellant had no opportunity to object to the trial court's action until after that action was taken … that raising his objection in his timely filed motion for new trial did preserve the error for appellate review." <u>Issa v. State</u>, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992).

Here, the trial court took judicial notice of the file and reviewed the report of Dr. Pittman outside the presence of the parties during its private deliberations. (R.R. Vol. 8 pg. 18). Obviously, Appellant had no opportunity to object to the trial court's actions and properly raised his objection in his timely filed motion for new trial. (C.R. pg. 111-16). Therefore, the error is preserved for appellate review.

**B. Texas Rules of Evidence 201**

The trial court took judicial notice of Dr. Pittman's report in violation of Rule 201 of the Texas Rules of Evidence.

Rule 201 provides for the admission of "Adjudicative Facts" under the rules set-out within it. Subsection (b) states that the kinds of facts that may be judicially noticed are facts that are "not subject to reasonable dispute because it:

(1) is generally known within the trial court's territorial jurisdiction; or

(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Tex. R. Evid. Rule 201 (b).

16

Rule 201 allows for a trial court to, on its own, take judicial notice of those facts, provided however, that "a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed." Tex. R. Evid. Rule 201 (c), (e).

The trial court took judicial notice of a report provided by Dr. Michael Pittman regarding Appellant's competency to stand trial. The trial court violated Rule 201 by not provided the opportunity to be heard. Also, the trial court judicially noticed facts that are not "Adjudicative Facts." Those facts asserted in the report could and would have been highly challenged at trial by Appellant if provided the opportunity. Courts have allowed a trial court to take judicial notice of a competency report in making a pretrial determination of "competency" to stand trial. However, the trial court in this case used it to assist in its finding of guilt, voluntariness of Appellant's statement, whether Appellant gave a false confession and determining the significance of Appellant's mental health evidence offered in mitigation of punishment. The trial court did not take judicial notice to reiterate Appellant's legal competency to stand trial. Instead, the trial court focused on the expert's opinion regarding Appellant's mental illnesses, or lack thereof. Further the trial court focused on the opinion that Appellant was pretending to have mental health issues and lack of understanding to avoid

17

responsibility for the offense. These are not the type of "Adjudicative Facts" intended for judicial notice under Rule 201.

Therefore, the trial court erred in taking judicial notice of the "Psychiatric Evaluation" contained in the court's file.

### C. Code of Criminal Procedure Article 46B.007

Article 46B.007 of the Texas Code of Criminal Procedure state, "[a] statement made by a defendant during an examination or trial on the defendant's incompetency, the testimony of an expert based on that statement, and evidence obtained as a result of that statement may not be admitted in evidence against the defendant in any criminal proceeding, other than at:

(1) a trial on the defendant's incompetency; or

(2) any proceeding at which the defendant first introduces into evidence a statement, testimony, or evidence described by this article."

Tex. Crim. Proc. Code Ann. § art. 46B.007 (West). Appellant offered no statement, testimony or evidence described in that article at trial. Therefore, the admission of Dr. Pittman's report was in violation of this article. Consequently, the trial court erred in considering it at trial.

### D. Crawford Violation

The consideration of Dr. Pittman's report violated Appellant's right to confrontation under Crawford. "In Crawford v. Washington, the Supreme Court

18

held that the Sixth Amendment confrontation right applies not only to in-court testimony, but also to out-of-court statements that are testimonial in nature. Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Confrontation Clause forbids the admission of testimonial hearsay unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant. Id. at 68, 124 S.Ct. 1354.

### 1. Standard of Review

Whether a particular out-of-court statement is testimonial is a question of law. De La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.2008). Wood v. State, 299 S.W.3d 200, 207 (Tex. App.—Austin 2009, pet. ref'd). Although evidentiary rulings are usually reviewed for an abuse of discretion, a statement's testimonial nature is a question of law that we review de novo. Wall v. State, 184 S.W.3d 730, 742 (Tex.Crim.App.2006). Lee v. State, 418 S.W.3d 892, 895-96 (Tex. App.—Houston [14th Dist.] 2013), *petition for discretionary review refused* (Mar. 12, 2014).

### 2. Testimonial

Dr. Pittman's report, prepared at the request of the trial court to determine Appellant's competency to stand trial, was testimonial in nature.

The threshold inquiry is whether the hearsay at issue is "testimonial. "Various formulations of th[e] core class of 'testimonial' statements exist...."

Crawford v. Washington, 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The Court of Criminal Appeals has summarized three kinds of testimonial statements: (1) "ex parte in-court testimony or its functional equivalent," i.e., "pretrial statements that declarants would expect to be used prosecutorially;" (2) "extrajudicial statements contained in formalized testimonial materials," such as affidavits, depositions, or prior testimony; and (3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Langham v. State, 305 S.W.3d 568, 576 (Tex.Crim.App.2010).

The United States Supreme Court has twice held that expert reports of scientific testing results are testimonial. Bullcoming v. New Mexico, —— U.S. —— –, ——, 131 S.Ct. 2705, 2715, 180 L.Ed.2d 610 (2011); Melendez–Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

Justice Scalia, writing for the majority in Melendez-Diaz, found that the expert's report was prepared "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" In rejecting the respondent's and the dissent's argument, he wrote "…there is little reason to believe that confrontation will be useless in testing analysts' honesty, proficiency, and methodology—the features that are commonly the focus in the cross-examination of experts. Therefore, reports setting forth

20

expert opinions made in preparation for testimony at trial are squarely within the definition of "testimonial" as contemplated by Crawford." Melendez–Diaz v. Massachusetts, 557 U.S. 305, 311, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009).

Some Texas cases have found that expert reports are not testimonial. "However, these opinions were written before the Supreme Court announced its opinion in Melendez–Diaz v. Massachusetts." Wood v. State, 299 S.W.3d 200, 208 (Tex. App.—Austin 2009, pet. ref'd), *citing* Melendez–Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). The holding of the United States Supreme Court in Melendez–Diaz and Bullcoming overrules those Texas cases. "[T]he Supreme Court explicitly rejected the analysis applied in some Texas cases, noting that such reports are testimonial notwithstanding that they are the 'result of neutral, scientific testing.'" Lee v. State, 418 S.W.3d 892, 896 (Tex. App.—Houston [14th Dist.] 2013), *petition for discretionary review refused* (Mar. 12, 2014).

**E. Analysis**

The Texas statutory scheme to determine a defendant's competency to stand trial clearly contemplates the expert conducting the evaluation to provide in-court testimony regarding his report at a trial/hearing regarding a defendant's competency. Tex. Crim. Proc. Code Ann. § art. 46B (West). Therefore, any report prepared by that expert regarding that evaluation would be prepared "under

circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."

We can safely assume that Dr. Pittman, ordered to conduct the competency evaluation according to the statute, was familiar with the statutory scheme that required it. Consequently, Dr. Pittman prepared his "Psychiatric Evaluation" report with an understanding that it would be available for later use in court.

Therefore, the trial court considered "testimonial" hearsay by taking judicial notice of Dr. Pittman's report in violation of Appellant's Sixth Amendment right to confrontation as required by Crawford.

**F. Harm**

A violation of Appellant's right of confrontation as outlined in Crawford is constitutional error.

Texas Rule of Appellate Procedure 44.2 states, "[i]f the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. Proc. 44.2.

"Having found constitutional error, we need not reverse the trial court's judgment if we conclude beyond a reasonable doubt that the error did not contribute to appellant's punishment. Smith v. State, 297 S.W.3d 260, 277 (Tex.

Crim. App. 2009), *citing* Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Therefore, the Court should reverse this case unless it believes beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

The United States Supreme Court has held that harmless error analysis for Confrontation Clause violations assumes that "the damaging potential of the cross-examination [would have been] fully realized." Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). However the Texas Court of Criminal Appeals has adopted a separate standard as to Crawford violations.

The Court of Criminal Appeals held, "[t]hus, courts reviewing whether the error in admitting out-of-court statements in violation of Crawford is harmless beyond a reasonable doubt should consider:

(1) The importance of the hearsay statements to the State's case;

(2) Whether the hearsay evidence was cumulative of other evidence;

(3) The presence or absence of evidence corroborating or contradicting the hearsay testimony on material points; and

(4) The overall strength of the prosecution's case

Davis v. State, 203 S.W.3d 845, 852 (Tex. Crim. App. 2006).

Appellant believes that this Court should apply the Van Arsdall assumption in this case. However, the error is ultimately harmful under either standard.

23

The error here is the admission of an expert's report without the benefit of cross-examination. In announcing its verdict at guilt/innocence, the trial court stated, "… I come to the same conclusions in that actually that Dr. Pittman does, and that is that some descriptions of and self-reporting of mental health issues may be exaggerated in this particular case." (R.R. Vol. 8 pg. 18-19). At punishment the trial court stated, "I came to my own conclusions, which were in great support supported by Dr. Michael Pittman's consideration of his exhibitions, his perceived symptoms, and believe those not to be - - any resulting mental illness or mental health issues that Mr. Crayton had to be of any significant mitigation in this particular case." (R.R. Vol. 9 pg. 107-108).

The trial court is referencing the "Psychiatric Evaluation" created and filed by Dr. Michael Pittman pursuant to a statutory competency evaluation. (C.R. pg. 61). In the "Conclusions" portion of the report, Dr. Pittman writes, "[t]hough he seemed upset about his current situation, I doubted that Mr. Crayton had a current mental illness; I believed that he was fabricating most of his symptoms." (C.R. pg. 61). Further, under the "Mental Status Evaluation" portion, Dr. Pittman writes, "[a]lthough Mr. Crayton claimed some ignorance, despite his educational attainment and previous good functioning, some ignorance of the various roles of courtroom personnel, I disbelieved him." (C.R. pg. 62). Essentially, Dr. Pittman's opinion is that Appellant was lying in order to appear to have mental illness and

24

lack understanding of the judicial system. The logical conclusion from this is that Appellant is willing to be deceitful to avoid criminal responsibility and to appear more sympathetic.

It should be noted that the since the State's evidence did not included any psychological evidence, the defensive strategy at trial did not include rebutting any psychological findings. The defense was not intending on having to challenge Dr. Pittman's testimony and did not request an expert be appointed to do so. The defense was well aware of Art. 46B.007 and its prohibition of the use of Dr. Pittman's testimony at trial. Tex. Crim. Proc. Code Ann. § art. 46B.007 (West). The trial court's judicial notice of the doctor's report flies in the face of this prohibition and left the defense "defenseless." Had the defense known that the trial court would violate Art. 46B.007, it would have refused to participate in the evaluation and requested an expert be appointed to rebut Dr. Pittman's opinions.

### 1. The importance of the hearsay statements to the State's case

The importance of Dr. Pittman's opinions to the State's case was to portray Appellant's statement as another attempt to falsely portray mental issues, while trying to avoid responsibility for his actions and to appear more sympathetic. That was exactly what it did. (R.R. Vol. 8 pg. 18-19, 21). The trial court dismissed the testimony regarding Appellant's mental issues and found them to be "exaggerated." (R.R. Vol. 8 pg. 18-19). The trial court found that Appellant was

25

in "complete possession of his mental faculties" and had anticipated and prepared for the interview. (R.R. Vol. 8 pg. 18-19). This was important to the trial court's determination regarding Appellant's credibility in the statement and as to consideration of lesser included offenses.

Furthermore, it damaged Appellant's ability at punishment to develop this mitigation, which significantly strengthened the State's argument that this was a particularly brutal case without mitigation. The trial court referenced Dr. Pittman's opinion in finding that Appellant's mental health symptoms were not genuine and, therefore, his mental health issues to not be of "significant mitigation." (R.R. Vol. 9 pg. 107-108).

## 2. Was the hearsay evidence cumulative of other evidence

Dr. Pittman's report is the only evidence supporting the trial court's finding that Appellant was "exaggerating" his mental health issues and that his manifested mental health symptoms were not real and, therefore, not mitigating. (R.R. Vol. 8 pg. 18-19, Vol. 9 pg. 107-108). No expert or lay witness testimony was offered at trial suggesting that Appellant was faking his mental illness symptoms.

## 3. The presence or absence of evidence corroborating or contradicting the hearsay testimony on material points

Appellant developed, through Mildred Townsend, that Appellant suffered from a very difficult childhood and was attending counseling and seeking spiritual

26

help in dealing with its effects. She also testified that he seemed genuine in this pursuit. (R.R. Vol. 7 pg. 74). Appellant further developed this evidence through his sister, Yalanda Crayton, including previous mental health treatment and a suicide attempt. (R.R. Vol. 9 pg. 52-58). This was further developed by the observable manifestations on the video statement of Appellant admitted by the State. (SX-71). The State offered no evidence to rebut those assertions or to corroborate the unexpected hearsay evidence of Dr. Pittman's report.

### 4. The overall strength of the prosecution's case

The State's case was based on DNA linking Appellant to the crime scene, Appellant having jumped off of a bridge shortly after law enforcement found the body and Appellant's confessions. The defensive strategy was to develop "reasonable doubt" by attack the investigation as a "rush to judgment" without fully investigating all leads, to present an alternate perpetrator theory and representing the confessions as unreliable due to mental health issues.

As to punishment, the defense was to present Appellant as a non-violent, troubled man with a difficult upbringing suffering from mental health issues that was pushed to the brink by a wife that desperately wanted more than he could give. Further, that Appellant was acting under "sudden passion" at the time. The State's case on punishment was to portray the crime as particularly brutal and Appellant as

a calculating individual that made a choice to murder his wife to "shut her up." (R.R. Vol. 9 pg. 86).

This was not an easy case for the trial court to decide as the length of its deliberations clearly showed, including having to move back the announcement of that verdict due to its deliberations. (R.R. Vol. 8 pg. 4). The trial court meticulously set out all the evidence and how it impacted its decisions at guilt/innocence. (R.R. Vol. 8 pg. 8-22). The trial court provided a well thought-out and precise road map for its decision and the facts that led to those decisions, including Dr. Pittman's report. Thus, this Court does not have to guess as to the relative strength or weakness of the State's case.

The trial court found that the physical evidence, coupled with his apparent suicide attempt shortly thereafter, leads to the rational conclusion that Appellant caused Ms. Crayton's death. (R.R. Vol. 8 pg. 11-12). Regarding Appellant's culpable mental state, the trial court considered a lesser charge of Manslaughter and whether the evidence showed merely an Aggravated Assault with a deadly weapon. (R.R. Vol. 8 pg. 15-16). The trial court does not easily dismiss these considerations. Appellant's interview filled in the gaps and allows for the dismissal of the defensive strategies of "rush to judgement," faulty investigation, and alternate perpetrator. If the trial court believed that Appellant's mental illness symptoms manifested on the video were legitimate, the State's case becomes weak

28

in this regard. If the trial court believed, as Dr. Pittman did, that Appellant was acting to avoid responsibility and garner sympathy, then the State's case becomes strong.

The trial court notes that Appellant's statement "in this particular case is helpful." (R.R. Vol. 8 pg. 16). The trial court mentions the "unusual behaviors" exhibited on the video, discusses Dr. Pittman's opinions and his own claimed "experienced as a mental health professional." (R.R. Vol. 8 pg. 18-19). Although the trial court describe one example of inconsistency he observed on the video, he points to no testimony supporting his conclusion other than Dr. Pittman's report. (R.R. Vol. 8 pg. 19-20).

As to the strength of the State's case at punishment, the finding that Appellant was a calculating deceitful murderer that does not suffer from mental illness was essential to disprove the defense of sudden passion and discount the mitigation evidence presented by Appellant.

While on the other hand, the Appellant's case at punishment was seemingly strong. The State presented no evidence of a violent past, except for one incident that resulted in no injuries. The victim's mother testified that she loves and forgives Appellant. (R.R. Vol. 9 pg. 13-14). Further, Appellant was able to present himself as a non-violent man that loved his son. Appellant was presented as having a trouble up-bringing filled with violence, but was at the time of the

crime truly trying to deal with his issues. The video showed, in dramatic fashion, the moment when Appellant describes the sudden passion that overcame him and that resulted in his terrible actions. However, Appellant did not anticipate the trial court's consideration of the competency report that could not by statute be used at trial supporting the trial court's belief that Appellant was faking his symptoms of mental illness.

The report's bearing on the strength and weaknesses of State's case is obvious from its reference by the trial court at both guilt/innocence and punishment. To believe that Dr. Pittman's report had "no impact" on the decision would be nonsensical. This Court would have to believe beyond a reasonable doubt that, for no reason at all, the trial court took judicial notice of the file on its own motion, obtained the report, read it and twice referenced it during its explanation of how it reached its decision.

**G. Motion for New Trial Evidence**

The State may point to the factual assertions made by the trial court at the hearing on the Motion for New Trial as proving that the error did not contribute to the outcome beyond a reasonable doubt. This Court should not consider that as evidence in determining harm.

**1. Texas Rule of Evidence 605**

Rule 605 states, "[t]he judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Tex. R. Evid. Rule 605. The Court of Criminal Appeals considered a trial court presenting facts at a hearing in Hensarling v. State. There the trial court judge testified at a hearing regarding a defendant's competency to stand trial presided over by a different judge. Hensarling v. State, 829 S.W.2d 168, 170-71 (Tex. Crim. App. 1992). The Court found that Texas Rule of Evidence 605 would apply to the hearing, but did not in that case because a different judge presided over the hearing. Hensarling v. State, 829 S.W.2d at 171. However, the Court of Criminal Appeals provided clarification regarding Rule 605, its application and purpose.

The Court held, "[t]he phrase 'the judge presiding at *the* trial may not testify in *that* trial' means that the judge who is presiding over a proceeding may not 'step down from the bench' and become a witness in the very same proceeding over which he is currently presiding." Hensarling v. State, 829 S.W.2d at 170.

The Court goes on to explain the purpose behind the rule. "The judge is a neutral arbiter in the courtroom, and the rule seeks to preserve his posture of impartiality before the parties and particularly in the eyes of the jury." Hensarling v. State, 829 S.W.2d at 171. As the Court points out, "[a] judge who testifies, for example, might be required to evaluate his own testimony…" Hensarling v. State, 829 S.W.2d at 171.

As the Houston 14th Appellate Court properly pointed out, "[w]e recognize that when a judge's character, impartiality, or professionalism has been impugned, it may be difficult to resist the urge to 'set the record straight.'" George v. State, 20 S.W.3d 130, 140 (Tex. App.—Houston [14th Dist.] 2000, *pet. ref'd*). It has always been permissible for a trial court to "clarify" facts for an appellate record as to those events that occur in open court for all to see, except the appellate court, and are not reasonably in dispute. However, where the sole issue of the hearing is regarding the actions of the trial court itself, to allow the trial court to make factual assertions regarding disputed facts goes to the heart of the purpose of Rule 605.

A trial court loses its "posture of impartiality before the parties" and would be required to evaluate its on testimony. Appellant would be required to convince the trial court judge to find that its own factual assertions are incorrect or lack credibility. Was Appellant to cross-examine the trial court judge in an effort to challenge its own factual assertions?

### 2. Analysis

Here, the trial court judge clearly believed, at trial, that it could properly take judicial notice of the file and with it, Dr. Pittman's report. It did so and read it specifically with an eye towards its consideration of guilt, the culpable mental state of Appellant, the voluntariness of Appellant's statement, and regarding the

mitigation evidence offered at punishment. The trial court announced its decisions and how the report played into its considerations.

Appellant filed its Motion for New Trial pointing out the trial court's error and that it constituted constitutional error. Neither party offered evidence at the hearing. The trial court, without request from either side, began testifying regarding its deliberations. (R.R. Hearing on Motion for New Trial pg. 5-7). The trial court's testimony included that he "…did not consider anything in Dr. Pittman's report to reach my conclusions…" (R.R. Hearing on Motion for New Trial pg. 6). The trial court even adds "…I'll want that information before the Court (referring to this Court) so they don't have to wonder whether or not I did consider." (R.R. Hearing on Motion for New Trial pg. 6). The trial court then asks whether either side had "[a]anything in response…" to that testimony. (R.R. Hearing on Motion for New Trial pg. 7).

Appellant's trial counsel, taken aback by the trial court's attempt to cure the error, objects and requests another judge be appointed to hear the motion. (R.R. Hearing on Motion for New Trial pg. 7, 8). The trial court considered neither the objection nor the request for another judge to hear the motion.

This issue is compounded when the trial court's testimony at the hearing is in contrast to its statements made at the earlier trial. This is not simply the trial court stating its internal thoughts regarding its decisions as discussed by the Waco

Court in Stewart. State v. Stewart, 282 S.W.3d 729, 737 (Tex. App.—Austin 2009, *no pet.*). Here, the trial court put its internal thought processes in the record at trial during its announcement of its decisions. When faced with the error it divulged in doing so, the trial court later made factual assertions at the new trial hearing addressing the error and the factual allegations contained in the motion.

To allow this process would be to deny Appellant a meaningful consideration of the merits of its claims at the Motion for New Trial and on appeal to this Court.

### H. Conclusion

Therefore, this Court should find that the trial court erred in considering Dr. Pittman's report and that the error was harmful regarding Appellant's conviction. Consequently, this Court should reverse the judgement of conviction and order a new trial. Alternatively, this Court should find that the error was harmful to the punishment assessed and order a new trial on punishment.

## II. DID THE TRIAL COURT ERR IN OVERRULING THE MOTIONS TO SUPPRESS EVIDENCE

Appellant filed a Motion to Suppress: Seizure Without Warrant alleging that certain items of evidence were seized by law enforcement without a warrant and admitted at trial. (C.R. pg. 43). Appellant also filed a Motion to Suppress

challenging the execution of the search warrant used to seize evidence admitted at trial. (C.R. pg 40).

## A. Seized Without Warrant

Law enforcement seized several items of evidence without first obtaining a warrant in violation of Appellant's Fourth Amendment Rights. Those items were later admitted at trial in violation of the Texas Code of Criminal Procedure.

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. Amador v. State, 221 S.W.3d 666, 672 (Tex.Crim.App.2007); *see* Young v. State, 283 S.W.3d 854, 872 (Tex.Crim.App.2009). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. Amador, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. Amador. at 672–73; Torres v. State, 182 S.W.3d 899, 902 (Tex.Crim.App.2005); Ford v. State, 158 S.W.3d 488, 492 (Tex.Crim.App.2005).

A search or seizure conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established"

35

exceptions to the warrant requirement. McGee v. State, 105 S.W.3d 609, 615 (Tex.Crim.App.), *cert. denied,* 540 U.S. 1004, 124 S.Ct. 536, 157 L.Ed.2d 410 (2003); Best v. State, 118 S.W.3d 857, 862 (Tex.App.-Fort Worth 2003, no pet.).

Whether a search or seizure is reasonable is a question of law that is reviewed de novo. Kothe v. State, 152 S.W.3d 54, 62 (Tex.Crim.App.2004).

Article 38.23 of the Texas Code of Criminal Procedure provides "[n]o evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex. Crim. Proc. Code Ann. § art. 38.23 (West).

Texas law does not recognize the inevitable-discovery doctrine, which would permit admission of evidence obtained in an unlawful search if such evidence would later have been obtained lawfully. In Daugherty, the court of criminal appeals confirmed that, if evidence was obtained illegally under article 38.23(a) of the code of criminal procedure, it must be excluded. State v. Daugherty, 931 S.W.2d 268, 269 (Tex. Crim. App. 1996). No exception exists for evidence that later might have been obtained lawfully. State v. Daugherty, 931 S.W.2d at 269. Thus, unless evidence is obtained legally with a search warrant or through one of the carefully-crafted exceptions to the warrant requirement, the evidence must be excluded.

36

Likewise, the Court of Criminal Appeals has rejected an effort to broaden the good-faith exception using federal precedent, and it has refused to adopt federal exceptions inconsistent with the text of our statutory exclusionary rule. Howard v. State, 617 S.W.2d 191, 193 (Tex.Crim.App.1979) (*op. on reh'g*) (declining to adopt federal good-faith doctrine of Michigan v. DeFillippo, 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)); *see also* Daugherty, 931 S.W.2d at 270 ("But Article 38.23 already contains one express exception, see Subsection (b) thereof, and according to the rules of statutory construction, where a statute contains an express exception, its terms must apply in all cases not excepted."); *id.* ("This construction is based on the express language of Article 38.23, not on blind obedience to United States Supreme Court decisions."). Based on these precedents, we hold the good-faith exceptions of do not apply to the Texas exclusionary rule. Douds v. State, 434 S.W.3d 842, 861-62 (Tex. App.—Houston [14th Dist.] 2014), *petition for discretionary review granted* (Sept. 17, 2014).

## 1. Analysis

Officers seized items from Appellant prior to the issuance of a search warrant for those items. The State stipulated to Appellant's standing to challenge the seizure of the items. (R.R. Vol. 2 pg. 37). Appellant proved at the hearing that the items were seized prior to the issuance of the search warrant. Therefore, the

burden shifted to the State to prove that the seizure fell within one of the "specifically defined and well-established" exceptions to the warrant requirement.

Although the State did not specifically set out an exception to the warrant requirement, the State seemed to suggest that seizure of items for the sole purpose of holding them until a warrant could be obtained is legally different than searching the item upon seizure. Appellant has found no authority providing for that "specifically defined and well-established" exception to the warrant requirement.

The closest exception to that assertion is the "exigent circumstances" exception.

However, Officer Weatherford asserted no "exigent circumstances" in her decision to seize the evidence from Appellant and to remove them to the evidence locker at the SSPD. She merely asserted that since she believed them to be evidence, she seized them. Officer Young did assert the possibility of the contamination of the evidence. However, he fell well short of establishing the factors necessary for that exception.

The *McNairy* court identified five factors relevant to a reasonable determination by the searching officers that evidence might be destroyed or removed before they obtained a search warrant: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) a reasonable belief that

the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of the contraband are aware that police are on their trail; and (5) the ready destructibility of the contraband and the knowledge that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in narcotics trafficking. Ramirez v. State, 105 S.W.3d 730, 744 (Tex. App.—Austin 2003, no pet.), *citing* McNairy v. State, 835 S.W.2d 101, 106–07 (Tex.Crim.App.1991) and United States v. Rubin, 474 F.2d 262, 268 (3d Cir.1973).

The trial court did not make a finding of "exigent circumstances," nor address the factors normally associated with that finding. (C.R. pg. 54-57).

Furthermore, the trial court's finding that officers at the scene had "good reason to believe" that the person they were dealing with was the suspect is not supported by the record. The officers could point to no evidence as to why they began to believe that the person was the suspect. The State presented no witness that explained how they came to that conclusion. The evidence showed merely that one officer had a "gut feeling," another officer thought someone started calling him "Tony," and another had a firm belief but could not explain how that came to be.

Also, the trial court's finding that the officers were acting in "good faith" when they seized the items is of no consequence. The good faith exception to the warrant requirement does not apply in Texas.

Therefore, the State failed to carry its burden of proof that the seizures fell within a "specifically defined and well-established" exception to the warrant requirement.

## 2. Harm

The error here is constitutional in nature because it stems from a violation of the United States Constitution. The items seized were used by the State to link Appellant to the crime through matching Ms. Crayton's DNA contained in blood stains on those items taken from Appellant without a warrant. As previously discussed, this physical evidence was very important to the State's case and, therefore, necessarily impacted the trial court's decision regarding guilt.

Consequently, this Court should reverse the judgement of conviction and remand this case to the trial court for a new trial.

## B. Improper Execution of Search Warrant

The officers executing the search warrant did not have jurisdiction to conduct the search and seizure of the evidence. The State failed to prove that the execution of the search warrant was assisted by an officer with proper jurisdiction.

Article 18.04 (3) requires that "[a] search warrant issued under this chapter shall be sufficient if it contains the following requisites:

…

(3) that it command any peace officer of the proper county to search forthwith the person, place, or thing named; …"

Tex. Crim. Proc. Code Ann. § art. 18.04 (West).

The Court of Criminal Appeals has held that an officer, executing a search warrant outside of his jurisdiction, must be assisted by an officer with jurisdiction at the location of the execution. Keen v. State, 626 S.W.2d 309, 313 (Tex. Crim. App. 1981 *overruled on other grounds*), *citing* Reynolds v. State, 506 S.W.2d 864, 864 (Tex. Crim. App. 1974) and Gilbert v. State, 493 S.W.2d 783, 783 (Tex. Crim. App. 1973).

Here, the items were seized pursuant to the search warrant in Smith County, Texas. (R.R. Vol. 2 pg. 172). The officers that executed the search warrant were commissioned by the Sulphur Springs Police Department having no jurisdiction in Smith County, Texas. The State failed to prove that a peace officer with jurisdiction in Smith County, Texas assisted in the execution of the search warrant. Therefore, the warrant was executed illegally and the trial court erred in overruling Appellant's Motion to Suppress those items.

Considering the nature of the items seized and the State's use of those items at trial, the harm associated with the error is obvious. The items were used to develop Appellant's DNA that was matched to the murder weapon. (R.R. SX-92B). Also, the fingernail clippings of Appellant had the victim's DNA on them. (R.R. SX-92B). Appellant's DNA was used to match him to clothing items that had the victim's blood on them. (R.R. SX-92B). The admission of this evidence was particularly damning to Appellant and was significant in the trial court's finding of guilt.

Therefore, this Court should find the error harmful and reverse the judgment of conviction and remand the case for a new trial.

## CONCLUSION AND PRAYER

It is for the reasons contained herein that Appellant would respectfully pray that this Court of Appeals for the Sixth District reverse the judgment of sentence of the Appellant and remand the case to the 8th Judicial District for retrial of the case or alternatively of the punishment phase.

Respectfully submitted,


/s/ Martin Braddy
Martin Braddy
Attorney for Appellant
SBN 00796240
121 Oak Ave., Suite A
Sulphur Springs, Texas 75482
(903) 885-2040
(903) 500-2704 fax


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing instrument was forwarded to 8TH Judicial District Attorney, Will Ramsay, on this the 26th day of April, 2015.


/s/ Martin Braddy
Martin E. Braddy

## WORD COUNT CERTIFICATION

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 7,912 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Martin Braddy
Martin E. Braddy